UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA                          :

    - against -                                              :

                                                               98 Cr. 1023 (LAK)

USAMA BIN LADEN, et al.,                         :

    WADIH EL-HAGE,                              :

                  Defendant.                          :
-------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
WADIH EL-HAGE'S MOTION TO COMPEL DISCOVERY


                                          JOSHUA L. DRATEL
                                          DRATEL & MYSLIWIEC
                                          2 Wall Street
                                          Third Floor
                                          New York, New York 10005
                                          (212) 732-0707
                                          jdratel@dratelmys.com

                                          SAM A. SCHMIDT
                                          111 Broadway
                                          13th Floor
                                          New York, New York 10006
                                          (212) 346-4666
                                          lawschmidt@aol.com

                                          *Counsel for Defendant*
                                          *Wadih El-Hage*

– Of Counsel –

Joshua L. Dratel
Sam A. Schmidt

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE GOVERNMENT SHOULD BE COMPELLED
TO PRODUCE THE REQUESTED DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Introduction

This Memo of Law is submitted in support of defendant Wadih El-Hage's motion to compel discovery in connection with his re-sentencing. Mr. El-Hage's discovery demand, conveyed in an October 3, 2012, letter from defense counsel to the government, is attached as Exhibit 1 to the accompanying October 24 2102, Declaration of Joshua L. Dratel, Esq. (hereinafter "Dratel Declaration"). The government's October 17, 2012, letter response, in which it refused to produce the bulk of discovery requested, but agreed to review certain materials related to a discrete group of requests, is attached as Exhibit 2 to the Dratel Declaration.

As detailed below, the government's response constitutes a fundamental misunderstanding of federal sentencing after *United States v. Booker*, 543 U.S. 220 (2005). Typically, and myopically, the government reduces the re-sentencing to a Guidelines computation, and ignores the other sentencing factors included within 18 U.S.C. §3553(a).

Yet, as discussed below, the discovery Mr. El-Hage seeks is relevant to three essential aspects of sentencing (and this re-sentencing):

(1)  the calculation of his Guidelines range;

(2)  the determination whether any departures are warranted;  and

(3)  the analysis of the §3553(a) factors.[1]

---

[1] As noted during the most recent conference before the Court, the government and defense disagree whether any of the previously determined Guidelines issues can be revisited at this re-sentencing. However, that issue – whether subsequently learned facts and changes in law that affect Guidelines analysis and application both generally and with respect to particular Guidelines sections authorize the Court to re-evaluate prior Guidelines findings – need not be addressed or decided at this stage because the same information sought in discovery is unquestionably relevant to the two other enumerated facets of sentencing:  departures and analysis of the §3553(a) factors.

1

Thus, while the Guidelines are a necessary component of any sentencing analysis, their computation is but the *beginning* of the analysis. The Guidelines represent but one of seven factors the Court is required to consider in imposing a sentence that, pursuant to §3553(a), is "sufficient, but not greater than necessary" to achieve the objectives of sentencing set forth in §3553(a)(2).[2]

Here, Mr. El-Hage's discovery requests can be divided generally into two categories: (a) those which seek information and materials that corroborate passages contained in the manuscript authored by Fazul Abdullah Mohammed (hereinafter "Harun"); and (b) those which seek information and material that independently support the conclusions drawn from the manuscript (hereinafter "Harun's Autobiography"), a 220-page single-spaced document (in English translation, as opposed to the original Arabic version).

Accordingly, it is respectfully submitted that the Court should compel the government to produce the discovery requested. Also, it is respectfully submitted that the Court should schedule a conference to explore further the issues raised below in order perhaps to narrow the contested issues at the re-sentencing.

---

[2] *See, e.g., Pepper v. United States*, ___ U.S. ___, 131 S. Ct. 1229, 1242, 1243 (2011) (Court *twice* emphasized that a sentencing judge assumes "an overarching duty overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)"). *See also United States v. Dorvee*, 616 F.3d 174, 182-83 (2d Cir. 2010) ("[u]nder §3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. §3553(a)(2)"), *quoting United States v. Samas,* 561 F.3d 108, 110 (2d Cir. 2009).

**ARGUMENT**

**THE GOVERNMENT SHOULD BE COMPELLED
TO PRODUCE THE REQUESTED DISCOVERY**

In its letter response, at 2, the government asserts that many of Mr. El-Hage's discovery requests are irrelevant because, due to "the overwhelming evidence of [Mr. El-Hage's] guilt adduced at his trial and his initial sentencing, it is difficult to envision a realistic scenario in which [Mr. El-Hage] will receive a sentence less than that called for under the Guidelines – life imprisonment."

That extraordinary position would make the re-sentencing an empty, formal exercise that would simply reiterate the Sixth Amendment violation that caused the remand for re-sentencing in the first place. Indeed, the government presupposes that the Court's decision(s) at re-sentencing will simply adhere to the previously calculated Guidelines range, and rely solely on the Guidelines to the exclusion of the other, and equally important, §3553(a) factors.

The government's remarkable contention also presumes that not a single fact could exist to alter the determination made eleven years ago, or that any such fact or circumstance, either independently or in conjunction with other facts and circumstances, could have any impact on the re-sentencing.[3] That claim is not only untenable, but it also conflicts with clearly established federal sentencing jurisprudence.

As a threshold matter, the foundation of Mr. El-Hage's right to discovery, at sentencing, of information that could mitigate his punishment is constitutional in nature. In fact, *Brady v. Maryland*, 373 U.S. 83 (1963), was itself a sentencing case, thereby obligating the government to

---

[3] Mr. El-Hage disputes many of the allegations and characterizations in the government's letter as they pertain to certain issues, *i.e.*, Mr. El-Hage's prison disciplinary record, but will address those in the formal sentencing submission, and not in this motion to compel discovery.

disclose all information and material that could reduce a defendant's punishment.

Also, while the government contends, at 3, that the "defense requests cannot conceivably be material here[,]" the statutes governing sentencing establish otherwise. For example, 18 U.S.C. §3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

In fact, in *Pepper v. United States*, ___ U.S. ___, 131 S. Ct. 1229 (2011), the Court cited §3661 as an important means of achieving just sentences: "[p]ermitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" ___ U.S. at ___, 131 S. Ct. at 1240, *quoting Wasman v. United States,* 468 U.S. 559, 564 (1984).[4]

Of course, information presented at sentencing is not confined to that admissible under the Federal Rules of Evidence, and includes a variety of forms of hearsay and documents and other materials that are not authenticated in the manner of trial evidence. In addition, §3553(a) includes factors that expand the concept of relevance at sentencing far beyond that defined by the Guidelines. For example, the government's narrow view of relevance would ignore the

---

[4] Indeed, the Court's opinion in *Pepper* opened with the following statement:

> [t]his Court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant-if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

___ U.S. at ___, 131 S. Ct. at 1235, *quoting Williams v. New York,* 337 U.S. 241, 246-247 (1949).

important issue of *relative* culpability, and substitute an inappropriate "one-size-fits-all" approach.[5]

In that context, the government's discussion of Mr. El-Hage's role in the offense, and whether and to what extent an enhancement for managerial role should affect the ultimate sentence, merits further inquiry (and is one issue that could benefit from a conference before the Court). In citing the Harun Autobiography for the proposition that Mr. El-Hage was the *treasurer* of *al Qaeda*'s East African cell during his tenure in Kenya, responsible for finance and administration (*see* Government Letter, at 3 n. 2), and *not* its leader (as alleged at trial), is the government conceding that Mr. El-Hage was removed from that cell's planning and commission of violent acts? If so, that attenuation from any violent conduct resolves the issue of managerial responsibility sufficiently for purposes of the re-sentencing. If not, however, Mr. El-Hage's discovery requests remain relevant thereto.

Indeed, in quoting Judge Sand's remarks at sentencing regarding Mr. El-Hage's role in the offense and the applicability of the enhancement for managerial role, *see* Government Letter, at 5, the government, whether or not inadvertently, necessarily implicates the §3553(a) factors and relative culpability. Thus, when Judge Sand noted that the government did *not* "claim[ Mr. El-Hage] was a member of the highest counsel of the conspiracy," he nevertheless added that Mr. El-Hage "wasn't a flunky or a gofer." Transcript, October 18, 2012, at 51 (Government Letter, at

---

[5] Also, by citing Mr. El-Hage's statement at his initial sentencing eleven years ago for the claim that he has not expressed any remorse, the government would improperly freeze the re-sentencing in time at a point well in the past. However, as the Court ruled in *Pepper*, post-sentencing rehabilitation was a relevant factor in post-*Booker* federal sentencing. ___ U.S. at ___, 131 S. Ct. at 1244-45 (statute – 18 U.S.C. §3742(g)(2) – precluding consideration, at re-sentencing, of post-sentence rehabilitation was invalid because it had the effect of making the Guidelines mandatory in "an entire set of cases").

5). As a result, Judge San concluded Mr. El-Hage "is somebody who . . . meets the requirements for the [role in the offense] enhancement."

However, that does not end the discussion, as regardless whether a defendant meets the technical criteria for an enhancement, the sentencing court is still required to apply §3553(a) factors in fashioning the appropriate "sufficient, but not greater than necessary" sentence.[6]  Also, the government, in arguing, at 5, that Mr. El-Hage "advanced these very arguments before Judge Sand in connection with his initial sentencing in October 2001[,]" conveniently ignores the dramatic difference between merely positing an argument and presenting compelling corroborative evidence.[7]

Moreover, the government's claim, at 2, that Mr. El-Hage's discovery requests constitute a "fishing expedition" is belied by the record, which establishes that the discovery requests are rather discriminating.  As noted **ante**, Harun's Autobiography spans 220 single-spaced pages, yet defense counsel have chosen only 27 specific passages for purposes of the instant discovery

---

[6] *See, e.g., Dorvee*, in which the Second Circuit instructed that

> [e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors.  See [*United States v.*] *Cavera,* 550 F.3d [180,]189 [(2d Cir. 2008) (*en banc*)].

616 F.3d at 182.

[7] The converse is true as well:  while the government argued at the initial sentencing (in its October 16, 2011, letter, at 13) that Mr. El-Hage should be assessed a role in the offense enhancement because he managed and/or supervised Harun, the information in Harun's Autobiography provides ample evidence that any such supervision was not directly related to the criminal and violent acts alleged in the Indictment.

demands, despite the dozens of mentions of Mr. El-Hage and the dense and lengthy description of Harun's activities on behalf of *al Qaeda* in Kenya and Somalia between 1994 and 1998. Indeed, after pages of protest, the government, at 6, has already conceded that the requests are relevant as they relate to "information (if it exists) tending to show that [Mr. El-Hage] did not function as a manager of the East Africa cell prior to his return to the United States in 1997 or that he was not aware of a plan to target Americans . . . ."

Regarding the other requests, they are demonstrably relevant to sentencing, and a few examples suffice. For instance, while the government maintains, at 4, that "it is entirely unclear how advice that Harun gave to the defendant about his business activities in any way could serve to mitigate the defendant's punishment[,]" the relevance is manifest.

Rather than simply "advice" from Harun, the quoted passages in Requests 2, 3, 5, 10, 11 15 & 20, trace a growing alienation between Mr. El-Hage and *al Qaeda*, so much so that Harun recommended Mr. El-Hage be replaced because of inattention to *al Qaeda* business and sloppy security that put the organization at risk (Requests 2 & 20, *see also* Request 3),[8] and that Mr. El-Hage was ordered (presumably by *al Qaeda* leadership) to "pack up and move to Peshawar" (Request 2), a directive *he refused to obey*.

Harun also reported that Mr. El-Hage was dissatisfied with *al Qaeda*'s financial support (Request 3), and that as a result Mr. El-Hage made his private business ventures his priority at

---

[8] The government misses entirely the relevance of a portion of Request 4. Harun's complaint that Mr. El-Hage traveled without notifying Harun or anyone else within *al Qaeda* was not a recognition that Mr. El-Hage was his superior, but instead constituted an example of Mr. El-Hage's disregard for *al Qaeda*'s operational security protocols.

the expense of *al Qaeda*.⁹  Ultimately, Harun opined that Mr. El-Hage wanted "to separate himself from the group."  *Id*.  Likewise, Request 15 includes Harun's discussion of Mr. El-Hage's legitimate relationship with a U.S. family in Nairobi, and provides further proof of Mr. El-Hage's burgeoning independence from the organization.  That Request also includes Harun's admission that Mr. El-Hage was deliberately kept unaware of certain of *al Qaeda*'s more sensitive operations.

That dereliction and disaffection are important in three critical respects because they establish that (1)  Mr. El-Hage was inexorably drifting away from *al Qaeda*, a break that became complete and permanent when he returned to the U.S. in September 1997;  (2)  by 1997 at the latest Mr. El-Hage was no longer in the loop with respect to *al Qaeda*'s illicit plans, and, indeed, was considered a security risk;  and (c)  as a result, Mr. El-Hage was no longer regarded as a "trusted associate" of *al Qaeda* (*see* Government Letter, at 6), but rather as a liability.¹⁰

In that context, the U.S.'s entreaties to Mr. El-Hage when they stopped him at the airport upon his return to Kenya from Pakistan in August 1997 (concurrent with the search of his residence in Nairobi and seizure of many of his personal papers and a laptop) to leave Kenya because his life was in danger *from al Qaeda*, assume added significance.  Requests 20-22 seek further information in that regard, as obviously the U.S. had sufficient confirmation that Mr. El-

---

⁹  That financial dissatisfaction is similar to that experienced and expressed by L'Houssaine Kherchtou, whose resentment at financial inequality within the organization marked the beginning of his eventual departure from *al Qaeda*.  T. 1283-84 (Trial Transcript, February 22, 2001).

¹⁰  Accordingly, Request 25 is relevant because the events within that time frame – late 1997, when the Embassy Bombings plot became active – demonstrate that by then Mr. El-Hage was long gone not only from Kenya, but from *al Qaeda*'s orbit as well.

Hage was, as reported in Harun's autobiography, no longer in *al Qaeda*'s good graces.

Also, while Mr. El-Hage may not have satisfied the burden for proving formal "withdrawal" from the conspiracies with which he was charged and convicted – a considerable burden – or for purposes of the technical elements necessary for imposition of the 15-level Guidelines enhancement (from level 28 to level 43), his conduct nevertheless has relevance with respect to the §3553(a) factors.[11]

Requests 5, 10 & 11 all relate to relative culpability, as they involve the activities and responsibilities of Ihab Ali, a/k/a "al Nawawi," whose role as described by Harun was far greater than previously disclosed. Mr. Ali's subsequent cooperation with the government no doubt merited some consideration at sentencing, but the gulf between his punishment and Mr. El-Hage's should not be so wide as to be disproportionate. Shedding light on Mr. Ali's duties within the East Africa cell will provide necessary information in that regard.

Request 6, relating to other persons sharing the same nickname – Abdel al Sabour – as Mr. El-Hage, is relevant because Jamal al Fadl, a principal government witness, failed to identify Mr. El-Hage in photographs (or in the courtroom). As a result, Mr. al Fadl may have, due to confusion, attributed to Mr. El-Hage certain conduct that may have been committed by someone else with the same nickname.

Requests 17 & 18 address Somalia, and establish that *al Qaeda*'s interest and activities in Somalia in 1996-97 – the subject of certain important Government Exhibits at trial – were unrelated to the U.S. or the U.N., but were instead directed at internal Somali conflict and

---

[11] In its October 16, 2001, letter in advance of the initial sentencing, the government argued that Mr. El-Hage, rather than withdraw, had "hid[] in plain sight" in the U.S. after his return in September 1997.

9

incursions by the Ethiopian military. In addition, those Requests involve information demonstrating that *al Qaeda*'s military ventures inside Somalia during that period were run by others from Mombasa, and were *not* supervised by Mr. El-Hage, who remained in Nairobi.

## Conclusion

Accordingly, for all the reasons set forth above, and all papers and proceedings had heretofore in this case, it is respectfully submitted that the Court should compel the government to produce the requested discovery, and/or schedule a conference to address these issues.

Dated:  24 October 2012
        New York, New York

                                               Respectfully submitted,

                                               JOSHUA L. DRATEL
                                               DRATEL & MYSLIWIEC
                                               2 Wall Street
                                               Third Floor
                                               New York, New York 10005
                                               (212) 732-0707
                                               jdratel@dratelmys.com

                                               SAM A. SCHMIDT
                                               111 Broadway
                                               13th Floor
                                               New York, New York 10006
                                               (212) 346-4666
                                               lawschmidt@aol.com

                                               *Attorneys for Defendant*
                                               *Wadih El-Hage*

– Of Counsel –

Joshua L. Dratel
Sam A. Schmidt