UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

             - v. -                          :          98 Cr. 1023 (LAK)

KHALID AL FAWWAZ,                                 :
      a/k/a "Khaled Abdul Rahman Hamad
         al Fawwaz,"                           :
      a/k/a "Abu Omar,"
      a/k/a "Hamad," and                    :
ADEL ABDEL BARY,
      a/k/a "Adel Mohammed Abdul
        Almagid Abdel Bary,"                  :
      a/k/a "Abbas,"
      a/k/a "Abu Dia,"                       :
      a/k/a "Adel,"                          :

               Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S OPPOSITION TO THE DEFENDANTS' MOTIONS FOR RULE 15 DEPOSITIONS


PREET BHARARA
United States Attorney
Southern District of New York
for the United States of America


Sean S. Buckley
Stephen J. Ritchin
Adam J. Fee

    Assistant United States Attorneys
    – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.       Applicable Legal Standards Under Rule 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    II.     Bary's Motion Should Be Denied in Its Entirety . . . . . . . . . . . . . . . . . . . . . . . . .3

          A.  Iqbal Ahmed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

          B.  Adbel Mageed Mohammed el Bary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    III.    Fawwaz's Motion Should Be Denied in Part And Granted in Part . . . . . . . . . . . . 7

          A.  Abdel Bari Atwan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

          B.  Sa'ad Al Faqih . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          C.  Mark Huband . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

          D.  Mohammad Al Massari . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          E.  Abdullah Anas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          F.  Dr. Mustapha Alani . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

          G.  Naomi Wood . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the motions of defendants Adel Abdel Bary and Khalid Al Fawwaz to take pretrial depositions of certain witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure.[1]   For the reasons set forth below, with one exception, their motions should be denied in their entireties.

Relying entirely on declarations of counsel rather than affidavits from the proposed witnesses, defendants Bary and Fawwaz have moved to depose seven witnesses in the United Kingdom, one witness in the United Arab Emirates and one witness in Egypt or another location agreeable to the parties.   With respect to all of these proposed witnesses except one (with respect to whom the Government has also moved for a deposition based on the witness's ill health), the defense has failed to show that a deposition is justified by "exceptional circumstances" and "the interest of justice."   Fed. R. Crim. P. 15(a).   Therefore, for the reasons set forth below, the defense has failed to make the required showings that (1) the witness is unavailable for trial, (2) the witness's testimony is material and (3) the testimony is necessary to prevent a failure of justice.

## DISCUSSION

## I.    APPLICABLE LEGAL STANDARDS UNDER RULE 15

Federal Rule of Criminal Procedure 15 allows for pretrial depositions in criminal cases

---

[1]    "Bary Br." refers to the motion and memorandum of law filed on September 3, 2013, in support of the Rule 15 motion of Adel Abdel Bary; "Patel Decl." refers to the declaration of Andrew G. Patel, filed in support of Bary's Rule 15 motion; "Fawwaz Br." refers to the amended Rule 15 motion and memorandum of law, filed on September 26, 2013, in support of Khalid al Fawwaz's Rule 15 motion to depose witnesses in the United Kingdom; "Fawwaz UAE Br." refers to the amended Rule 15 motion and memorandum of law, filed on September 26, 2013, in support of Khalid al Fawwaz's Rule 15 motion to depose a witness in the United Arab Emirates; and "Kirby Decl." refers to the amended declaration of David V. Kirby, filed in support of Fawwaz's Rule 15 motion.

only in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1); *see United States* v. *Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) ("Depositions generally are disfavored in criminal cases").   The burden is on the party seeking a Rule 15 deposition to establish that such exceptional circumstances exist and that injustice will result if the motion is denied.  *See United States* v. *Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see also United States* v. *Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994).   Specifically, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice."  *United States* v. *Cohen,* 260 F.3d 68, 78 (2d Cir. 2001); *see also United States* v. *Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984); *United States* v. *Rosenstein*, 474 F.2d 705, 715 (2d Cir. 1973).

The mere fact that a purported witness resides in a foreign country does not demonstrate his or her "unavailability" for Rule 15 purposes.  *See United States* v. *Ismaili*, 828 F.2d 153, 160 (3d Cir. 1987) (holding that unavailability requirement not satisfied for witnesses residing in Morocco).   The moving party rather must make some showing that the foreign-based witness is truly unable or unwilling to come to the United States to testify and that the moving party has made a "good faith effort to produce the person to testify at trial."  *Johnpoll*, 739 F.2d at 709.

In addition, the moving defendant must typically show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant."  *Kelley*, 36 F.3d at 1125 (holding that denial of depositions of potential government witnesses not an abuse of discretion where anticipated testimony, although relevant, was not exculpatory) (internal quotation marks and citation omitted); *see also United States* v. *Esquivel*, 755 F. Supp. 434, 439 (D.D.C. 1990) ("a defendant typically demonstrates the 'exceptional circumstances' necessary for success on a Rule

2

15(a) motion by some preliminary showing that the testimony will exculpate him" (citations omitted)); *United States* v. *Merritt*, No. 90 Cr. 767 (JSM), 1991 WL 79235, at *5 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory").   The moving party must do more than show that the testimony sought is relevant to the case.   *Ismaili*, 828 F.2d at 161 & n.6; *see also id.* at 161 (holding that a district court cannot abuse its discretion in denying a Rule 15 deposition where the testimony "could not negate the crux of the government's indictment").   Moreover, a motion to take testimony that is cumulative is properly denied, *United States* v. *Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (citing *United States* v. *Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. March 2, 2005)), as is one to take inadmissible hearsay.   *Grossman*, 2005 WL 486735, at *3 (citations omitted).

   In addition to requiring a showing of unavailability and materiality, a district court must also consider whether significant "countervailing factors" exist which would render the taking of depositions unjust.   *United States* v. *Drogoul*, 1 F.3d at 1552.   "'An obviously important factor is whether a deposition will expedite, rather than delay, the administration of criminal justice.'"   *Id*. at 1556 (quoting Fed. R. Crim. P. 15, Advisory Committee's Note, 1974 amendment).

## II.  BARY'S MOTION SHOULD BE DENIED IN ITS ENTIRETY

   Defendant Bary has moved to depose two witnesses: (i) Iqbal Ahmed, an attorney who works in London, and (ii) the defendant's brother, Abdel Mageed Mohamed el Bary, who resides in Cairo, Egypt.   With respect to both defendants, Bary has failed to make the threshold showing that the witnesses are "unavailable" to testify at the April 2014 trial in this matter.   *See*, *e.g.*, *Ismaili*, 828 F.2d at 160.   Moreover, the facts proffered by Bary as to the reasons why pretrial

depositions of these two witnesses are appropriate fail to carry the burden of establishing that their

testimony is material and necessary to prevent a failure of justice.   Accordingly, for the reasons

set forth below, the Court should deny Bary's motion in its entirety.

### A.      Iqbal Ahmed

Bary describes Ahmed as a lawyer who represented Bary when Bary was arrested in

September 1998, during Bary's questioning by the British police on September 24 through 26,

1998, and during a portion of Bary's legal challenge to his extradition to the United States.   (Patel

Decl. ¶¶ 3, 4 and 6).   As a result of his presence when Bary was questioned, Bary says that Ahmed

"was a witness to the manner in which the interrogation of Adel Abdel Bary was conducted and

has personal knowledge of the disclosures that were made to him by UK law enforcement

officers."   (Patel Decl. ¶ 5).   Ahmed "is currently willing to travel to the Southern District of

New York to testify at a hearing or a trial in this matter."   (Patel Decl. ¶ 7).   Nonetheless, Bary

moves to depose him "in the event that his schedule prevents him from travelling to New York in

accordance with the Court's schedule."   (Patel Decl. ¶ 8).

Bary's motion to depose Ahmed makes none of the showings required before this motion

may be granted.   First, Bary has not shown that Ahmed is unavailable for trial.   The possibility

that Ahmed's schedule may conflict with the trial does not render him unavailable, *see*, *e.g.*,

*United States* v. *Al Kassar*, 572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008) (a witness's "vague

speculation that some theoretical future work commitments might make him unavailable is

entirely insufficient to support a finding of unavailability"), especially when the trial, like this one,

is expected to be of significant length.   *See Stein*, 482 F. Supp. 2d at 364 ("[a]though [the witness]

has indicated that his work schedule might interfere, the government's case alone is estimated to

4

take months.   It would seem quite likely that [the witness's] work schedule will permit his attendance at some point"); *Al Kassar*, 572 F.Supp.2d at 376-77 ("[e]ven if [the witness] were unavailable on any given date, moreover, it is exceedingly unlikely, on its face, that he would be unavailable throughout the approximately three weeks estimated for this trial . . . .").

Moreover, there has been no showing that Ahmed's testimony would be material, let alone necessary to prevent a failure of justice.   Bary has not specified what Ahmed would say during his testimony.   All Bary has said is that Ahmed "was a witness to the manner in which the interrogation of Adel Abdel Bary was conducted and has personal knowledge of the disclosures that were made to him by UK law enforcement officers," and that he "was also Mr. Abdel Bary's solicitor for a period of time during the legal challenge to the extradition to the United States." (Patel Decl. ¶¶ 5 and 6).   But the defense has audio recordings of the interviews of Bary, should it wish to put before the jury the manner in which his interrogation was conducted.   And it is difficult to imagine that the disclosures made to Bary's UK lawyers or the procedural history of the extradition proceedings will be relevant to any issue before the trial jury; Bary certainly has not identified such an issue.

### B.     Adbel Mageed Mohammed el Bary

Bary also seeks to depose his brother, Abdel Mageed Mohamed el Bary, pursuant to Rule 15.   According to Bary's motion, Bary expects that his brother will testify about: (i) defendant Bary's political activities in Egypt; (ii) torture and numerous incarcerations to which defendant Bary and other family members purportedly were subjected by the former regime; (iii) actions taken by officials of the Mubarak regime to force the closure of a food distribution business in Egypt; and (iv) the bases under which defendant Bary sought refugee status in the United

Kingdom.   (Patel Decl. ¶¶ 10(a)-(d)).   Moreover, although Bary's brother has indicated to defense counsel that he is ready and willing to travel to the Southern District of New York to testify at the April 2014 trial in this matter, defense counsel reports that Bary's brother's "concern[]" that he may not be able to obtain a visa to travel to the United States.   (Patel Decl. ¶ 11).

Bary's motion fails with respect to his brother for the same reasons that it fails as to Iqbal Ahmed.   *See supra* Section II.A.   First, Bary has not established that his brother would be unavailable for trial.   While Bary's brother speculates "that it will be easier for him to get a visa to travel to London or some other location than it would be for him to get a visa to travel to the United States," *see* Patel Decl. ¶ 13, he does not even contend that he has made any efforts to get a visa to travel to the United States.   As such, Bary's motion establishes neither that the foreign-based witness is truly unable or unwilling to come to the United States nor that the moving party has made a good faith effort to produce the person to testify at trial.   As such, the Court should deny Bary's motion for that reason alone.   *See Johnpoll*, 739 F.2d at 709.

Further, Bary has not established that his brother's testimony would be material, let alone necessary to prevent a failure of justice.   It appears from Bary's proffer that his brother's testimony will support a claim that he and members of his family were mistreated by Egyptian authorities and, for that reason, Bary sought asylum in the United Kingdom.   Bary's motion, however, is silent as to how the proposed testimony, all of which concerns events that predate the crimes charged in this case, would be material to, or would help to establish Bary's defense, or

would tend to exonerate him.[2]   *See United States* v. *Whiting*, 308 F.2d 537, 541 (2d Cir. 1962) (denial of Rule 15 motion appropriate where movant "was unable to demonstrate that the proposed testimony would be material to or would help to establish [the defendant's] defense or that the proposed testimony 'would tend to exonerate' him" (quoting *United States* v. *Broker*, 246 F.2d 328, 329 (2d Cir. 1957)).

As such, Bary's motion with respect to his brother has failed to establish any of the three factors enumerated by the Second Circuit, *see Cohen,* 260 F.3d at 78, and should be denied.

## III.   FAWWAZ'S MOTION SHOULD BE GRANTED IN PART AND DENIED IN PART

Defendant Fawwaz has moved to depose six individuals in the United Kingdom, and one individual in the United Arab Emirates.   In all but one instance, the facts proffered by Fawwaz do not satisfy the requirements of Rule 15.   Accordingly, for the reasons set forth below, the Government respectfully submits that the Court should deny Fawwaz's motion with respect to six of his proposed deponents, *see infra* Sections III.A through III.F, and should grant the defendant's motion only with respect to Ms. Naomi Wood, *see infra* Section III.G.

### A.   Abdel Bari Atwan

Defendant Fawwaz has moved to depose Abdel Bari Atwan in the United Kingdom. Fawwaz describes Atwan as the former editor of Al-Quds Al-Arabi, an Arab language newspaper based in London.   (Kirby Decl. ¶ 7).   Following Fawwaz's arrest in 1998, Atwan submitted statements to law enforcement in the United Kingdom and in connection with the extradition

---

2      Indeed, to the extent Bary seeks to introduce evidence regarding the purported mistreatment by Egyptian authorities of Bary and his family, the Government likely will move *in limine* to preclude such evidence as not relevant under Rules 401 and 402 of the Federal Rules of Evidence, and as unfairly prejudicial under Rule 403.

proceedings.   Fawwaz quotes from one of these submissions, in which Atwan attested, among other things, that Fawwaz told Atwan that he (Fawwaz) disagreed with Bin Laden's August 1996 Declaration of Jihad (the "August 1996 Fatwah") and was "upset" when the August 1996 Fatwah was released.   (Kirby Decl. ¶ 7).   Fawwaz also broadly asserts that Atwan, due to his former work as an editor, could testify concerning "the difference between peaceful Arab dissidents and violent jihadists."   (*Id*. ¶ 8).   According to Fawwaz, Atwan "refuses to come to the United States" due to his being "refused entry" on a prior attempt to visit the United States. (*Id*. ¶ 9).

Fawwaz has failed to make the showings required for his motion to be granted.   The basis for Atwan's refusal to travel to the United States for trial is left unspecified by the defense, other than a vague reference to a prior, unsuccessful attempt by Atwan to enter the United States. Fawwaz neither explains how Atwan's travel to New York may be affected by the prior denial of entry nor describes any steps taken by defense counsel to address Atwan's concerns. "Conclusory statements of unavailability by counsel are insufficient" to meet a movant's burden. *United States* v. *Chusid*, No. 00 Cr. 263 (LAK), 2000 WL 1449873, *1 (S.D.N.Y. Sept. 27, 2000).

Nor has the defense made clear how Atwan's testimony would be material, let alone necessary to prevent a failure of justice.   The defense argues first that Atwan (as well as other witnesses sought to be deposed) would offer "crucial" testimony challenging the accusation that the Advice and Reformation Committee ("ARC") acted as a "London media office for al Qaeda." (Fawwaz Mem. at 12).   To that end, Fawwaz contends that Atwan will testify that the ARC "existed as an independent entity," that Fawwaz "pursued [the ARC's] agenda wholeheartedly," and that the August 1996 Fatwah "undermined the ARC and was not approved by it."   (See Fawwaz Br. at 16).   As an initial matter, based on the proffers made to date, if such testimony

were given, it would necessarily be based on statements Fawwaz made to Atwan.   (*See* Kirby

Decl. ¶ 7).   Indeed, the only basis for knowledge of the ARC's structure and/or affiliations

proffered by Fawwaz is that Fawwaz "had a number of dealings with Mr. Atwan, mostly

concerning the ARC and its communiques."   (Fawwaz Br. at 7).   There is, however, no claim by

Fawwaz that Atwan was involved in, or otherwise had any firsthand knowledge of, the operations

of the ARC outside of what Fawwaz himself had told Atwan.   It seems likely that what Atwan

knew about the ARC he knew because Fawwaz told him; Atwan's full-time occupation at the time

was as the editor of a newspaper.   (Kirby Decl. ¶ 7).   As such, based on the facts set forth by

Fawwaz, it is difficult to understand how Atwan's hearsay testimony with respect to ARC would

be admissible at trial in this matter, let alone material to Fawwaz's defense and necessary to

prevent a failure of justice.[3]

      Moreover, Fawwaz provides no foundation for Atwan's purported ability to testify from

personal knowledge as to "the issue of the dangers Saudi dissidents faced both in Saudi Arabia and

abroad."   (*See* Fawwaz Br. at 12, 16).   For example, Fawwaz does not assert that Atwan has any

ties to Saudi Arabia, let alone that Atwan is a Saudi dissident or otherwise supported Saudi

dissidents.[4]   Similarly lacking is any support for Fawwaz's claim that Atwan's anticipated

---

[3]    Similarly, Atwan's proffered testimony with respect to Fawwaz being "shocked and
dismayed that Bin Laden issued his 1996 Declaration" may be inadmissible hearsay.   Although
Fawwaz has proffered certain facts regarding the timing of Atwan's interactions with Fawwaz in
the wake of the August 1996 Fatwah, *see*, *e.g.*, Fawwaz Br. at 7, the proffer remains unclear as to
the specific timing of those interactions (*e.g.*, what is meant by "almost immediately").
Depending on when and in what circumstances those statements were made, Atwan's testimony
concerning Fawwaz's *post hoc* statements concerning his feelings about the release of the August
1996 Fatwah may well be inadmissible hearsay.   *See infra* Section III.B.

[4]    To the contrary, based on publicly available materials (including Atwan's own website),
it appears that Atwan was born in Palestine and has resided in London since 1979.

testimony would be material to, let alone refute the government's claims regarding telephone security measures employed by Fawwaz.   (*See* Fawwaz Br. at 16).   Neither the declaration nor the memorandum of law proffer any basis to believe that Atwan had any firsthand knowledge of telephone security procedures employed by Fawwaz, let alone any basis to claim that such measures were employed to protect ARC members in Saudi Arabia or elsewhere.

Finally, Fawwaz argues that Atwan "can testify articulately about the issues concerning the difference between peaceful Arab dissidents and violent jihadists."   (Kirby Decl. ¶ 8).   It is not at all clear what such testimony would be, or how it would be relevant.   Presumably the jury will know that peaceful Arab dissidents express their dissatisfaction peacefully, while violent jihadists engage in violence.   Without a fuller proffer of what Mr. Atwan would say, there is little basis to find that it is material, let alone necessary to prevent a failure of justice.

### B.      Sa'ad Al Faqih

Fawwaz similarly has moved to depose Sa'ad al Faqih in the United Kingdom.   In his motion, Fawwaz describes al Faqih as a "Saudi dissident living in London and a close acquaintance of [Fawwaz]," who was involved with two different "Saudi dissident organization[s]."   (Kirby Decl. ¶ 10).   According to Fawwaz, al Faqih is in a position to testify on three topics relevant to Fawwaz's defense: (i) the dangers faced by Saudi dissidents and the necessity of taking precautions concerning communicating with dissidents still living in Saudi Arabia; (ii) the ARC is a legitimate dissident organization with its own peaceful agenda; and (iii) the August 1996 Fatwah undermined the ARC and was not approved by Fawwaz or the ARC. (Kirby Decl. ¶ 10).   In addition, the defense notes that al Faqih participated in the purchase of a satellite telephone, and that he "may be able to shed light" on the issue of Fawwaz's having

procured a satellite telephone for use by Bin Laden and other co-conspirators in al Qaeda and EIJ. (*Id.*).   According to Fawwaz, al Faqih has informed counsel that "he is not willing to travel to the United States" nor "presumably, would he be allowed to travel to the United States."[5]

As with Fawwaz's other proposed deponents, Fawwaz's motion again fails to carry its burden with respect to the proffered testimony of al Faqih.   First, Fawwaz's motion fails to set forth with any specificity al Faqih's anticipated testimony with respect to the purported dangers faced by Saudi dissidents or the precautions concerning communicating with dissidents located in Saudi Arabia (*see* Kirby Decl. ¶ 10), let alone establish how such testimony would be material to his defense.   While Fawwaz's motion contends that the anticipated testimony of al Faqih "will refute the government's claims that the telephone security procedures that Mr. Al Fawwaz had to employ to protect the ARC members in Saudi Arabia and elsewhere were actually indicia of terrorism," (Fawwaz Br. at 12), he provides no explanation as to how it is that al Faqih's testimony will accomplish this.   He does not say, for example, what telephone security procedures either al Faqih or Fawwaz took, or during what period each of them employed such measures, or even why they did so (if al Faqih employed such "security" measures at all), making it difficult to ascertain the relevance of one set of telephone security measures to the other.   As such, Fawwaz's motion proffers no foundation for this purported testimony other than al Faqih's status as a Saudi dissident.   That alone is fatal to Fawwaz's application.   *See United States* v. *Whiting*, 306 F.2d

---

5       Although the Kirby Declaration avers that al Faqih has informed counsel that he (al Faqih) is not willing to travel to the United States, that arguably does not satisfy counsel's threshold obligation to make a good faith effort to secure the presence of al Faqih at trial.   *See*, *e.g.*, *United States* v. *Oudovenko*, No. 00 Cr. 1014, 2001 WL 253027, at *2 (E.D.N.Y. Mar. 7, 2001) (holding that repeated allegations that each witness "stated that he or she 'would not travel voluntarily to the United States to testify;'" were not sufficient because "counsel's affirmation fails to establish that he or [the defendant] made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses").

537, 541 (2d Cir. 1962) (affirming denial of a Rule 15 application where the moving papers did not "make a convincing showing that the anticipated testimony of the proposed witnesses would be material to any defense available to [the defendant]").

The second proposed topic of al Faqih's testimony is equally deficient.   While Fawwaz contends that al Faqih will testify that "the Advice and Reformation Committee existed as an independent entity, pushing for peaceful reform of the government of Saudi Arabia," he proffers no basis for this testimony.   Although Fawwaz claims that al Faqih was an active member of two different Saudi dissident organizations – the Committee for the Defense of Legitimate Rights (CDLR) and the Movement of Islamic Reform in Arabia (MIRA) – he is notably silent with regard to what (if any) relationship al Faqih had with the ARC.   (*See* Kirby Decl. ¶ 10).   As such, there is no basis to believe that al Faqih had any firsthand knowledge of the structure of the ARC (*e.g.*, the fact that Bin Laden was on the managing board of the ARC), let alone its activities and the reasons it engaged in such activities.   This is especially true in light of the secretive nature of the ARC, which, according to Fawwaz, had only two publicly acknowledged members, *i.e.*, Fawwaz and Bin Laden.   (*See* Fawwaz Br. at 4).   As a result, al Faqih's knowledge of the ARC and its activities very likely would be based on statements Fawwaz made to al Faqih, which likely would be inadmissible hearsay.

For similar reasons, Fawwaz's claim that al Faqih can testify that the August 1996 Fatwah undermined the ARC and was not approved by the ARC or Fawwaz is without foundation. Unless al Faqih was personally involved with the ARC, it is difficult to imagine how he could testify about what the ARC and Fawwaz approved, or what undermined the ARC, other than by repeating inadmissible hearsay statements by Fawwaz.

Equally unavailing is Fawwaz's contentions that al Faqih (or others) would testify that Fawwaz was "shocked and dismayed" at the issuance of the August 1996 Fatwah, and that "the '96 Declaration undermined the ARC and was not approved by it."   (Fawwaz Br. at 12, 16).   Of particular relevance, the defense has proffered nothing regarding the circumstances of Fawwaz's purported expression to al Faqih of "shock[] and dismay[]" at the release of the August 1996 Fatwah, let alone the time at which he claimed to have discussed the fatwah with al Faqih. Depending on when and in what circumstances those statements were made, al Faqih's testimony concerning Fawwaz's *post hoc* statements concerning his feelings about the release of the August 1996 Fatwah may well be inadmissible hearsay.   *See, e.g., United States* v. *Cardascia*, 951 F.2d 474, 486-88 (2d Cir. 1991) (affirming exclusion of letter of resignation, offered under the state-of-mind exception to the hearsay rule, in which a defendant stated that he disagreed with the policies and decisions made when his bank extended certain loans); *Lamberti* v. *United* States, 22 F. Supp. 2d 60, 72 (S.D.N.Y. 1998) (finding that statements that witness made after defendant's trial to reporter as to defendant's beliefs, at time of trial, about defendant's involvement in drugs were not admissible under hearsay exception for statements of declarant's then-existing mental state, given that, to the extent relevant, statements went to witness' prior, not his then-existing, state of mind); *see also* Fed. R. Evid 803(3), 1972 Committee Notes ("The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result . . ."); *United States* v. *Solano*, No. 05 Cr. 563 (LTS), 2010 WL 2718973, at *1 (S.D.N.Y. July 10, 2010) ("the statement is only relevant to the extent it captures [the defendant's] memory in March 2005 of what he believed at the relevant times in 2003 and 2004. Such backward-looking statements of memory by

13

out-of-court declarants are inadmissible."); *United States* v. *Cosentino*, 581 F. Supp. 600, 602

(S.D.N.Y. 1984) ("A statement about a past state of mind does not fall within the state of mind

exception to the hearsay rule because in the words of Justice Cardozo, 'the testimony now

questioned face[s] backward and not forward.'") (quoting *Shepard* v. *United States*, 290 U.S. 96,

106 (1933)).

      Finally, Fawwaz conclusorily contends that al Faqih "will be able to speak to issues

concerning the purchase of a satellite telephone connected to this case."   (Fawwaz Br. At 16).

While it is true that evidence adduced at the 2001 trial indicated that al Faqih was involved in the

purchase of a satellite telephone, and the Government expects to offer similar evidence at the April

2014 trial in this case, Fawwaz has provided no explanation as to how such testimony would be

material or helpful to Fawwaz's defense.  *See*, *e.g.*, *Whiting,* 308 F.3d at 541 (denying Rule 15

motion where counsel proffered that the "proposed witnesses could give testimony relevant to the

Count II cable . . . but [] declined to admit or deny that [the defendant] sent the cable, or to indicate

what form [the defendant]'s defense to the charge involving the cable would take").   Indeed,

given that the documentary evidence establishing al Faqih's links to the satellite telephone was

recovered during the search of Fawwaz's London residence, such evidence very likely will further

inculpate Fawwaz and, without more, it is difficult to understand how such testimony would be

exculpatory.  *See Kelley*, 36 F.3d at 1125 (holding that denial of depositions of potential

government witnesses not an abuse of discretion where anticipated testimony, although relevant,

was not exculpatory).

      Thus, with respect to the satellite phone connected to this case, Fawwaz's motion has failed

to "make a convincing showing that the anticipated testimony of [al Faqih] would be material to

14

any defense available to [Fawwaz]." *Whiting*, 308 F.2d at 541.   The prospect of such testimony provides no basis for granting Fawwaz's motion.

####    C.    **Mark Huband**

Fawwaz has moved to depose Mark Huband, a former journalist living in the United Kingdom who, while a journalist, interviewed Fawwaz on a number of occasions.   (Kirby Decl. ¶ 12).   Huband submitted a statement in the United Kingdom extradition proceedings, in which Huband attested that, based on what he learned from Fawwaz, the release of the August 1996 Fatwah "caused a divergence of views between Mr. Bin Laden and the ARC." (*Id.*). According to Fawwaz, Huband has said to defense counsel that "he cannot promise that he will come to the United States to testify at trial." (*Id.* ¶ 13).

Fawwaz has failed to satisfy any portion of his burden with respect to Huband. First, defense counsel's representation that Huband simply "cannot promise" at this time that he would travel to the United States for trial is plainly insufficient to establish Huband's "unavailability*." See, e.g.*, *United States* v. *Al Kassar*, 572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008) (the witness's "vague speculation that some theoretical future work commitments might make him unavailable is entirely insufficient to support a finding of unavailability"); *United States* v. *Varbaro*, 597 F. Supp. 1173, 1181 (S.D.N.Y. 1984) ("Although the rule does not necessarily require a showing of certainty that a witness will be unavailable, surely it requires a showing of a specific reason why the witness might not be available."), *rejected on other grounds*, *United States* v. *Riccardelli*, 794 F.2d 829, 834 (2d Cir. 1986).

Second, Huband's proffered testimony, as summarized by Fawwaz, plainly reflects Fawwaz's backward-looking statements during one or more interviews concerning the impact of

15

the August 1996 Fatwah on "ARC's reputation" and upon "other [unnamed] members of the ARC."

(Kirby Decl. ¶ 12).   The proffered testimony does not even purport to reflect statements by

Fawwaz concerning his then-existing state of mind; the basis for Huband's testimony is his

interviews of Fawwaz while he was working as a journalist.   (Kirby Decl. ¶ 12).   Therefore, it

appears that Huband's testimony is almost certainly inadmissible hearsay. *See, e.g.*, *Cardascia*,

951 F.2d at 488 ("a determination of whether a statement falls within the state of mind exception

requires a predicate finding as to whether the statement relates to a then existing state of mind or to

a past memory or belief offered to prove the fact remembered or believed"); *Solano*, 2010 WL

2718973, at *1; *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375315, at *9 n.9 (S.D.N.Y. Feb. 17,

2005) ("the state of mind exception of Rule 803(3) also requires that the statement be

contemporaneous to the event sought to be proved").   Further, Huband's proffered testimony is

not material, nor necessary to prevent a failure of justice.   The proffered testimony merely reflects

that Huband and Fawwaz discussed a divergence between ARC and Bin Laden, not Fawwaz's

personal views.   (Kirby Decl. ¶ 12).6

### D.    Mohammad Al Massari

Fawwaz's motion with respect to the proposed testimony of al Massari should be denied

for substantially the same reasons that the Court should deny the motion with respect to al Faqih.

---

6       Fawwaz also claims that Huband will testify about the independence of the ARC and its
goals, that Fawwaz ran the ARC and pursued its agenda wholeheartedly, that he was shocked
and dismayed that Bin Laden issued the August 1996 Fatwah, and that the ARC did not approve
the August 1996 Fatwah and was undermined by it.   (Fawwaz Br. at 16).   Fawwaz further
claims that Huband "can speak to the issue of the dangers Saudi dissidents faced both in Saudi
Arabia and abroad," and will discuss the difference between legitimate dissidents or reformers
and terrorists.   (*Id.*).   Fawwaz has provided no basis to believe that Huband, a journalist,
would do anything more than repeat what Fawwaz told him were he to testify on any of those
subjects.   As such, Huband's testimony on those topics would be inadmissible hearsay.   *See*
*supra* Section III.C.

*See supra* Section III.B.   Specifically, Fawwaz contends that al Massari "is an exiled Saudi physicist and political dissident presently living in the United Kingdom pursuant to a grant of asylum."   (Kirby Decl. ¶ 14).   As with al Faqih, Fawwaz notes that al Massari was involved in two different Saudi dissident organizations, neither of which is the ARC.   (*Id.*).   Fawwaz's motion provides no specific information about what al Massari would say with respect to each of the topics on which Fawwaz anticipates he would, provides no specific basis to believe that al Massari possesses relevant personal knowledge, and does not establish that such testimony is material to Fawwaz's defense.

Moreover, Fawwaz's motion with respect to al Massari is deficient for an additional reason.   Fawwaz has not established that al Massari is unavailable to testify at trial.   Rather, Fawwaz contends only that "London counsel for Mr. al Fawwaz . . . has tried repeatedly to meet with [al Massari], Mr. Al Massari will not respond to those requests."   (Kirby Decl. ¶ 15).   This establishes only that Fawwaz's London counsel has failed to meet with al Massari, not that he is unavailable at trial.   *See United States* v. *Varbaro*, 597 F. Supp. at 1181 (requiring showing of a specific reason why a witness might not be available).

Accordingly, Fawwaz's motion satisfies none of the three prongs (*i.e.*, unavailability, materiality, and justice) required to establish the need for a Rule 15 deposition of al Massari.   His motion should be denied with respect to al Massari as well.

### E.     Abdullah Anas

The last of the witnesses Fawwaz seeks to depose in the United Kingdom is Abdullah Anas, whom he describes as an Algerian scholar who helped the Afghanistan mujahedeen fight the Soviet invasion from 1983-1992.   (Kirby Decl. ¶ 16).   Fawwaz says that during those years Anas

was particularly close to Abdullah Azzam, one of the founders of the Services Bureau along with Osama Bin Laden and allegedly one of the central figures in raising money, and recruiting and training young Muslims, for the war against the Soviets.   (Kirby Decl. ¶ 17).   Anas is also said to have become a close friend of Bin Laden during this time, working with him in organizing the assistance of non-Afghan Muslims in the fight against the Soviets.   (*Id.*).   Bin Laden, however, in a disagreement about where Muslims should turn their attention after Afghanistan, broke away from Azzam and the Services Bureau in 1989.   (*Id.*).

Based on defense counsel's discussions with Anas, he believes that Anas "can testify authoritatively about the various roles non-Afghan Muslims played in the war against the Soviet Union, whether in relief work or in fighting in Afghanistan."   (Kirby Decl. ¶ 18).   Defense counsel also asserts that Anas

> can speak authoritatively about Bin Laden and his slow metamorphosis from one of the heroes of the Afghan war, who received the support of the United States either directly or indirectly, to a terrorist.   Mr. Anas will testify that this metamorphosis was a process that took place from 1989 through about 1996.   Mr. Anas told me that he last met with Bin Laden in 1995 in Sudan.   At that time, Bin Laden showed him one of the communiques from the [Advice and Reformation Committee] and asked Mr. Anas's opinion of the documents and its premises.

(*Id.*).   In addition, Anas spoke to counsel "of the meaning of giving bayat, and the significance of the act and he can illuminate the process and implications to the jury."   (Kirby Decl. ¶ 19). Finally, Anas, who moved to the United Kingdom in late 1995 and has obtained political asylum there (Kirby Decl. ¶ 20), advised defense counsel "that he refuses to come to the United States without guarantees of his safety, which I understood to include guarantees that his asylum status will not be compromised.   The defense obviously cannot provide such guarantees.   However, he appears willing to be deposed in London."   (Kirby Decl. ¶ 21).

18

Again, Fawwaz has failed to make the showings required for his motion to be granted. The "guarantees of his safety" that Anas apparently requires before coming to New York to testify are not detailed by the defense, but the sticking point seems to be Anas's concerns about his asylum status in the United Kingdom.   Fawwaz does not explain why travel to New York would compromise Anas's asylum status, and the initial information the Government has been able to obtain indicates that it would not.   The United Kingdom Border Agency's website, under the heading "Asylum – Successful applications," states:   "If you have been recognised as a refugee or given humanitarian protection and you do not have any travel documents, you can apply to us for new travel documents.   You will be able to leave and enter the United Kingdom with these documents, but you will not be allowed to travel to your country of origin."[7]   Moreover, according to a Reuters website, it appears that Anas traveled to Istanbul in November 2012 to participate in a seminar there.[8]   The defense has not explained why Anas cannot travel to New York, if he can travel to Istanbul.

Nor has the defense made clear how Anas's testimony would be material, or necessary to prevent a failure of justice.   The defense argues first that Anas "can set in context Mr. Al Fawwaz's participation as a relief worker during the Afghan war against the Soviet Union." (Fawwaz Br. at 13).   The defense makes no claim, however, that Anas has any personal knowledge of what Fawwaz did during the Afghan war against the Soviet Union.   For Anas to

---

7      http://www.ukba.homeoffice.gov.uk/asylum/outcomes/successfulapplications/ (viewed on Oct. 1, 2013).   The Government has inquired of British authorities whether Anas's travel to New York to testify at trial would adversely impact his asylum status and will inform the Court and the defense as soon as it receives an answer.

8      *See* http://blogs.reuters.com/the-human-impact/tag/international-security/ ("Abdullah Anas spoke with AlertNet after a panel discussion titled "The Death of Global Jihadism, a Disparate al Qaeda?" at the "Reporting on International Security and Terrorism" seminar in Istanbul.") (viewed on Oct. 1, 2013).

testify about what others did because Fawwaz may have played a similar role is of little relevance. Such testimony would only encourage the jury to speculate that Fawwaz may have played one of the roles that Anas describes.

Also of questionable relevance is Anas's proffered testimony about "Bin Laden's metamorphosis from a leader in the fight against the Soviet Union . . . to a terrorist."  (Mem. at 13).   The defense argues that "[t]his metamorphosis is crucial to Mr. Al Fawwaz's defense because we allege that his dealings with Bin Laden were with the dissident Bin Laden, not the terrorist."   (*Id.*).   Fawwaz says he will argue that he "shifted his support for Bin Laden.   The issuance of the '96 declaration was that turning point."   (*Id.*).   But if 1996 was the turning point for Fawwaz, there is little indication that Anas can testify to Bin Laden's alleged metamorphosis through that time.   The defense alleges that Anas became a close friend of Bin Laden while working with him "organizing the assistance of non-Afghan Muslims in the fight against the Russians."   (Kirby Decl. ¶ 17).   That fight ended in February 1989,9 and in the same year Bin Laden, "in a disagreement on where Muslims should turn their attention after Afghanistan, broke away from" Anas's father-in-law and the organization Anas's father-in-law and Bin Laden had founded together.   (Kirby Decl. ¶ 17).   The only subsequent meeting between Anas and Bin Laden that the defense alleges is a single meeting in 1995.   (Kirby Decl. ¶ 18).   These allegations afford little foundation for purported testimony "about Bin Laden's evolution" that is relevant to this case.   If Anas has personal knowledge of Bin Laden's ideology only when they were working together in Afghanistan through 1989, and can recount a single conversation with Bin Laden in

---

9     *See, e.g.*, http://www.britannica.com/EBchecked/topic/7798/Afghanistan ("The Soviet withdrawal was completed on Feb. 15, 1989, and Afghanistan returned to nonaligned status") (viewed on Oct. 1, 2013).

1995, he will have little ability to testify from personal knowledge about the alleged

metamorphosis – the critical turning point of which occurred in 1996 -- that Fawwaz claims

exculpates him.

Finally, Fawwaz's claim that Anas "can also testify to the meaning of giving 'bayat,'"

providing "a more nuanced approach to the concept" than the giving of unconditional loyalty

(Mem. at 13-14), is also, based on the proffer made so far, of little relevance.   The Indictment

alleges that "[m]embers of al Qaeda pledged an oath of allegiance (called a "bayat") to defendant

USAMA BIN LADEN and al Qaeda."   (Indictment ¶ 1).   Unless Anas was a member of al

Qaeda, or in some other way had personal knowledge of the nature of the bayat required of al

Qaeda members (and there has been no allegation of such personal knowledge), his understanding

of bayat in other contexts is very unlikely to be relevant in the trial of this case.

### F.      Dr. Mustapha Alani

The last witness whom Fawwaz seeks to depose is Dr. Mustapha Alani, whom he seeks to

depose in the United Arab Emirates.   Fawwaz alleges that during the extradition proceedings,

London counsel interviewed Dr. Alani, who provided a draft statement.   (Kirby Decl. ¶ 22).

That statement is not attached to the current motion, but Fawwaz appears to quote from it, alleging

that Dr. Alani

> met Mr. al-Fawwaz on four occasions and was able to confirm Al Fawwaz's/ARC's role as
> peaceful "Islamic reformist movement."   As with the other witnesses, Dr. Alani describes
> Mr. al-Fawwaz's frustration and distress following the August 1996 Declaration by
> [Osama Bin Laden], which Mr. al-Fawwaz described to him as "a personal issue" and
> nothing to do with the ARC.   From these conversations, Dr. Alani viewed "ARC [as] a
> committee which was the representative voice of a group of individuals, and not a
> mouthpiece for [Osama Bin Laden's] personal views."

(Kirby Decl. ¶ 23).   Fawwaz's American and London counsel "have tried to get in touch with Dr.

21

Alani through his email address without success.   London counsel attached a read-receipt to his emails to Dr. Alani and reports that the emails were opened.   London counsel also traveled to the United Arab Emirates on other business and tried to contact Dr. Alani but could not get through to him."   (Kirby Decl. ¶ 24).

Again, Fawwaz has not made the showings required for his motion to be granted.   The Court should not conclude that that Dr. Alani is unavailable for trial simply because he has not responded to some emails, and because efforts to contact him in the United Arab Emirates during a single trip there were unsuccessful.[10]   Although Rule 15 "does not necessarily require a showing of certainty that a witness will be unavailable, surely it requires a showing of a specific reason why the witness might not be available."   *Varbaro*, 597 F.Supp. at 1181.   Here, no such reason has been provided.   *See also United States* v. *Chusid*, No. 00 Cr. 263 (LAK), 2000 WL 1449873, *1 (S.D.N.Y. Sept. 27, 2000) ("Conclusory statements of unavailability by counsel are insufficient" to meet a movant's burden).   Fawwaz has established only that his lawyers have not yet reached Dr. Alani, not that he is unavailable to testify.

Nor is Dr. Alani's proffered testimony material or necessary to prevent a failure of justice.

---

10     The defense may be looking for Dr. Alani in the wrong place.   The website of the organization for which he works, the Gulf Research Center, reports that "The original Dubai office of GRC is now used by Knowledge Corporation (KCorp), which is a commercial company that was established and is owned by the GRC Chairman," and the Gulf Research Center itself has a "network of cooperation partners and offices in both the Gulf region and Europe. Key steps have been the opening of the Gulf Research Center Foundation (GRCF) in Geneva and the Gulf Research Center Cambridge (GRCC). GRC further operates its regional offices from Jeddah, Saudi Arabia." (http://www.grc.net/index.php?sec=About+GRC) (viewed Oct. 1, 2013).   Two media reports, from August and June of this year, identify Dr. Alani as located in Geneva (*see* http://www.usatoday.com/story/news/politics/2013/08/28/syria-pentagon-attack-assad-alani-saleh/2723857/; http://www.washingtontimes.com/news/2013/jun/3/soccer-politics-at-play-in-iran-qatar-qualifier/) (viewed Oct. 1, 2013), so it may be that calls to the offices of the Gulf Research Center Foundation in Geneva would be more productive that efforts to reach Dr. Alani in Dubai.

Fawwaz claims that Dr. Alani "will testify that Mr. al-Fawwaz was shocked and dismayed that Bin laden issued his 1996 Declaration."   (Fawwaz UAE Br. at 6).   If such testimony were given, it likely would be based on statements Fawwaz made to Dr. Alani.   (*See* Kirby Decl. ¶ 23). Depending on when and in what circumstances those statements were made, Dr. Alani's testimony that, in essence, Fawwaz told him he was shocked and dismayed by Bin Laden's August 1996 Fatwah may well be inadmissible hearsay.   *See, e.g., Cardascia*, 951 F.2d at 486-88 (affirming exclusion of letter of resignation offered under the state of mind exception to the hearsay rule in which a defendant stated that he disagreed with the policies and decisions made when his bank extended certain loans).

Fawwaz also claims that Dr. Alani, "an expert in security and terrorism, will say that the Advice and Reformation Committee existed as an independent entity, pushing for peaceful reform of the government of Saudi Arabia," and "in his view the ARC was a committee which was the representative voice of a group of individuals, and not a mouthpiece for Osama Bin Laden's personal views."   (Fawwaz UAE Br. at 6).   Fawwaz identifies, however, no basis for such testimony other than what Fawwaz told Dr. Alani.   What Fawwaz told Dr. Alani about Fawwaz's organization is almost certainly both inadmissible hearsay and insufficiently reliable to form the basis for an expert opinion.   *See, e.g. Dallas & Mavis Forwarding Co., Inc.* v. *Stegall,* 659 F.2d 721, 722 (6th Cir.1981) (testimony of state trooper offered as an expert regarding cause of accident based on story of biased eye witness "the sort of hearsay testimony" Rule 703 was meant to foreclose); *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1223, 1246-47 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987) (self-serving laypersons' affidavits and checklists prepared for litigation cannot be basis for expert opinion).   Accordingly, the opinion testimony of

23

Dr. Alani that Fawwaz proffers very likely would not be admissible, let alone testimony that is both material and necessary to prevent a failure of justice.

### G.   Naomi Wood (Landlord of Beethoven Street)

Finally, Fawwaz has moved to depose Naomi Wood in London.   As set forth in the Kirby Declaration, Ms. Wood was the rental agent and/or landlord of 1A Beethoven Street – a premises that was leased at various times by defendants Bary and Fawwaz.   (*See* Kirby Decl. ¶ 5).   While counsel for Fawwaz successfully contacted Ms. Wood, it appears that she has ceased communicating with defense counsel.

The Government does not object to Fawwaz's motion with respect to Ms. Wood. Although the Government does not believe that Ms. Wood's testimony would be "material" in the sense that it in any way would exculpate Fawwaz, *see Kelley*, 36 F.3d at 1125, Ms. Wood's testimony also is the subject of a separate motion by the Government.   Accordingly, it appears that both parties agree that Ms. Wood is (i) unavailable for trial; (ii) her testimony is material; and (iii) her testimony is necessary to prevent a failure of justice.

**CONCLUSION**

Accordingly, for the foregoing reasons, the Government respectfully submits that the Court should deny the motions of Fawwaz and Bary, with the single exception of the motion to depose Ms. Wood.

Dated:          New York, New York
                October 2, 2013


                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney


                              By:   /s/ Sean S. Buckley
                                    Sean S. Buckley
                                    Stephen J. Ritchin
                                    Adam J. Fee
                                    Assistant United States Attorneys
                                    (212) 637-2261/2503/1589

25