UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOHAMED RASHED DAOUD AL-'OWHALI,

                          Defendant-Movant,

      - v. –

UNITED STATES OF AMERICA,

                        Respondent.

20 Civ. 0832 (LAK)
98 Cr. 1023 (LAK)

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Stephen J. Ritchin
Assistant United States Attorney
     *Of Counsel*

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant-movant Mohamed Rashed Daoud Al-'Owhali's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "Motion" or "Mot.").[1]  Through his Motion, the defendant seeks to vacate his conviction pursuant to 18 U.S.C. § 924(c) for using and carrying a destructive device during and in relation to the 1998 bombing of the American Embassy in Nairobi, Kenya, in violation of 18 U.S.C. § 844(f).  That statute provides criminal penalties for maliciously damaging or destroying United States property by means of fire or an explosive.  Defendant argues that Section 844(f) is no longer a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3)  in the wake of *United States v. Davis,* 139 S. Ct. 2319 (June 24, 2019), which found one of the two definitions of that term in Section 924(c)(3) to be unconstitutionally vague, and thus his Section 924(c) conviction must be vacated.  In addition, he asks that he be resentenced on the remaining counts of conviction.  Defendant's argument is meritless, and this Court should deny the Motion without a hearing.

The  defendant's motion is procedurally barred.  The defendant did not raise on his direct appeal the claim he now makes.  He has not demonstrated any cause for this failure and cannot do so, given that other defendants made similar claims, including vagueness challenges to the definition of "crime of violence" in Section 924(c), before the defendant filed his appeal.  Nor can the defendant demonstrate prejudice from the constitutional claim he makes, since violations of Section 844(f) are crimes of violence under both definitions of that term in Section 924(c)(3), and

---

[1] The Motion consists of two documents: (1) a form containing responses to questions and (2) an argument that follows.  References herein to page and question numbers within the Motion are references to the former document; references herein to paragraph numbers within the Motion are references to the latter document.

the definition in Section 924(c)(3)(A) was unaffected by *Davis*.  In addition, the defendant has not even attempted to demonstrate that he is factually innocent of violating Section 924(c), nor could he in light of the record in this case.

Defendant's motion also fails on the merits.  A violation of 18 U.S.C. § 844(f), the crime underlying the Section 924(c) conviction the defendant challenges, remains a crime of violence after *Davis* because it is a crime that has as an element the use of physical force against the person or property of another.  *See* 18 U.S.C. §924(c)(3)(A).  Section 844(f) forbids malicious damage to or destruction of federal property "by means of fire or an explosive."  Thus the volitional acts it forbids are setting fires and using explosives, acts that necessarily involve the use of physical force against a person or property.  And since Section 844(f) requires that damage or destruction be inflicted upon federal property, it also requires that physical force be used against the person or property "of another."  18 U.S.C. § 924(c)(3)(A).

## BACKGROUND

The defendant was convicted in 2001 of hundreds of crimes stemming from his involvement in the August 7, 1998 bombings of the United States Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania, including conspiracies to murder and to use weapons of mass destruction against United States nationals and property overseas, as well as substantive murder and bombing charges.  *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 101, 107 (2d Cir. 2008); Docket No. 640.[2]  He was, in brief, "an al Qaeda operative who helped to place

---

[2] Unless otherwise noted, "Docket" refers to the criminal docket, 98 Cr 1023 (LAK).

the bomb that exploded outside the American Embassy in Nairobi, left the truck shortly before the bomb detonated and was seen fleeing the scene by an eyewitness." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d at 105 (citation omitted).

The indictment on which the defendant was tried was filed on May 8, 2000.  552 F.3d at 105.  That indictment was denominated the S7 indictment ("Indictment" or "Ind.").  Docket No. 186.  Of particular relevance to the Motion, among the hundreds of crimes of which the defendant was convicted were (1) using and carrying a destructive device during and in relation to the bombing of the United States Embassy in Nairobi, Kenya, a crime of violence, in violation of 18 U.S.C. § 924(c), Ind. Count 285, Docket No. 640; and (2) the underlying crime of violence, bombing the United States Embassy in Nairobi, Kenya, with death resulting, in violation of 18 U.S.C. §§ 844(f)(1) and (3).  Ind. Count 7; Docket No. 640.[3]

The jury considered, but declined to impose, the death penalty on Al-'Owhali.  552 F.3d at 101.  In October 2001, he was sentenced to life in prison plus forty years, thirty of which were imposed pursuant to his conviction on Count 285.  Docket No. 640.

In 2008, Al-'Owhali's appeals were rejected.  552 F.3d at 93; *In re Terrorist Bombings of U.S. Embassies in East Africa Fifth Amendment Challenges),* 552 F.3d 177 (2d Cir.2008).  In April 2009, the Second Circuit remanded the case for proceedings regarding the voluntariness of his

---

[3] Defendant refers to the count charging a violation of 18 U.S.C. § 924(c) as Count 283, rather than 285, and the underlying crime of violence count charging a violation of 18 U.S.C. § 844(f) as Count 5, rather than Count 7.  (*E.g.,* Mot. ¶ 1).  These appear to be errors.  Count 283 of the S7 Indictment charged attempted murder of internationally protected persons in violation of 18 U.S.C. §§ 1111 and 1116 and Count 5 charged a conspiracy to destroy buildings and property of the United States, in violation of 18 U.S.C. § 844(n).  Ind. Counts 5, 283.

statements based on newly disclosed information.  *See In re Terrorist Bombings of U.S. Embassies in E. Africa*, 407 F. App'x 548, 549 (2d Cir. 2011) (summary order).  In June 2009, the Supreme Court denied Al-'Owhali's petition for certiorari on the Second Circuit decisions affirming his convictions and sentence.  *Al-'Owhali v. United States*, 556 U.S. 1283 (2009).  In 2010, after a hearing and a review of other relevant evidence, the District Court denied defendant's motion to reopen his suppression hearing, a decision the Second Circuit affirmed in 2011.  407 Fed. App'x at 549.

In 2012, Al-'Owhali filed in this district a Section 2255 motion, asserting eleven claims that his rights were violated during the investigation and trial of the charges against him.  (Docket No. 1 (12-cv-3331 (KTD)).  After the Government responded to his motion and Al-'Owhali replied, Al-'Owhali sought leave to withdraw that 2255 motion and the District Court permitted him to do so.  (Docket Nos. 7, 10, 11, 12 (12-cv-3331 (KTD)).

In January of this year the defendant filed the instant Section 2255 motion.

## APPLICABLE LAW

### A. Procedural Default

A prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotation marks and citation omitted); *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently

4

affirmed that a collateral challenge may not do service for an appeal."). This bedrock principle, which arises from concerns about finality in criminal judgments, finds practical expression in the rule that a court may not consider on a Section 2255 motion a claim that could have been raised, but was not raised, on direct review. Such a claim has been "procedurally defaulted." *Bousley*, 523 U.S. at 622; *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.").

Failure to raise a claim on direct review results in procedural default even where there has been a change in the substantive criminal law, announced after the defendant's conviction became final, lending legal support to his claim.[4] *See, e.g., Bousley*, 523 U.S. at 617–24 (concluding that defendant had procedurally defaulted claim based on new rule of substantive criminal law announced after his conviction became final); *Thorn*, 659 F.3d at 231-33 (same); *Fordham v. United States*, 706 F.3d 1345, 1349-51 (11th Cir. 2013) (same); *Jennings v. United States*, 696

---

[4] The new rule announced in *Davis* is "substantive" because it "alters the range of conduct … that the law punishes." *Welch v. United States*, 136 S. Ct. 1257, 1266 (2016); *see id.* at 1268 (holding that the vagueness ruling in *Johnson v. United States*, 135 S. Ct. 2551 (2015), was substantive). Prior to *Davis*, Section 924(c)(3)(B) was understood to be a valid criminal statute. *Davis*'s vagueness holding means that the statute is "'illegal and void and cannot be a legal cause of imprisonment.'" *Montgomery v. Louisiana*, 136 S. Ct. 718, 730 (2016) (quoting *Ex parte Siebold*, 100 U.S. 371, 376 (1880)). It thus qualifies as a substantive rule for the same reason that prior Supreme Court decisions invalidating federal criminal statutes on First or Fourteenth Amendment grounds were deemed substantive. *See, e.g., In re Rivero*, 797 F.3d 986, 990 (11th Cir. 2015) (identifying the Supreme Court's decisions holding that the First Amendment forbids criminal prosecutions for flag burning, and that the Fourteenth Amendment forbids criminal prosecutions for private homosexual sodomy between consenting adults, as substantive rules entitled to retroactive application on collateral review); *Muth v. Frank*, 412 F.3d 808, 817 (7th Cir. 2005); *United States v. Hilton*, 386 F.3d 13, 18 (1st Cir. 2004).

F.3d 759, 764 (8th Cir. 2012) (same); *see also Harrington v. United States* , 689 F.3d 124, 128–29 (2d Cir. 2012) (confirming that procedural default rules govern review of claim based on "new substantive rules of federal criminal law" announced after defendant's conviction became final). A procedurally defaulted claim cannot be entertained unless the movant "can first demonstrate either [1] 'cause' and 'actual prejudice,' or [2] that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); and *Smith v. Murray*, 477 U.S. 527, 538 (1986)).

To show "cause" for failure to raise the claim on direct appeal, a defendant must demonstrate that "'some objective factor external to the defense'" prevented him from raising it, *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Carrier*, 477 U.S. at 488), "such as a claim that 'is so novel that its legal basis [was] not reasonably available to counsel' kept him from raising the claim on direct appeal" (commonly referred to as the "novelty" or "futility" ground). *Whitman v. United States*, 754 F. App'x 40, 42 (2d Cir. 2018) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).[5]

"The futility test to excuse a default is strict: 'the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all.'" *Thorn*, 659 F.3d at 233 (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)).

---

[5] As the Second Circuit recognized, the fact that a defendant could have raised a claim on appeal and did not do so—thus defeating "cause" for the purposes of procedural default—does *not* mean that the "failure to raise the argument constitutes ineffective assistance of counsel." *Whitman*, 754 F. App'x at 43. Rather, there is a wide range of arguments that, while reasonably available to counsel for the purposes of procedural default, were nonetheless "not 'significant and obvious' given the long-standing" posture of the courts "at the time," thus rendering counsel's failure to raise such arguments reasonable. *Id.* (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015)).

Thus, the mere fact that the defendant's claim rests on the Supreme Court's ruling in *Davis*, which was not announced until after his conviction became final, does not establish that the basis for the claim was not reasonably available on direct review. *Id*. To the contrary, if the claim had been or was being raised by others at the time of direct review, it was "reasonably available," even if the claim would have been "unacceptable to [the direct appellate] court at that particular time." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)) (rejecting assertion of cause based on purported novelty of issue where reported cases at the time of direct review reflected other defendants' raising the issue); *Thorn*, 659 F.3d at 233.

Further, to establish prejudice, a defendant must establish "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting [the defendant's] entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). A "claim of actual prejudice has validity only if an error … amounts to prejudice per se, regardless of the particular circumstances of the individual case." *Id.*; *see also, e.g., Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (holding that the question in determining actual prejudice—in the context of a complaint about an erroneous state court jury instruction—is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Finally, where there is no judicially cognizable cause and prejudice for the procedural default, a court may reach the merits of the defendant's claim only upon a showing of actual

innocence. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (explaining that the actual innocence exception is meant to avoid grave miscarriages of justice—"to see that federal constitutional errors do not result in the incarceration of innocent persons"). To meet this test, the "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quotation marks and citation omitted); *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

## B.  Crimes of Violence Under Section 924(c)

As relevant here, Section 924(c) imposes additional punishment when a defendant uses or carries a destructive device, such as a bomb, in connection with a "crime of violence."  18 U.S.C. § 924(c)(1).  The statute defines "crime of violence" as a felony

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. § 924(c)(3)(A)-(B).

In *United States v. Davis*, 139 S. Ct. at 2319, the Supreme Court struck down the "residual" clause, Section 924(c)(3)(B), as unconstitutionally vague.  *Id*. at 2336; *see also United States v. Barrett*, 937 F.3d 126 (2d Cir. Aug. 30, 2019) (reversing Circuit precedent and holding that the residual clause is invalid under Davis).

Accordingly, following *Davis*, in order for an offense to serve as a predicate crime of violence for a Section 924(c) count, it must qualify as a crime of violence under the "elements" or "force" clause, Section 924(c)(3)(A).  That is, the offense must "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).

Whether an offense qualifies as a crime of violence under the elements clause of Section 924(c)(3)(A) is a question of law for the court, determined by applying the "categorical approach." *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018).  Under the categorical approach, "courts identify 'the minimum criminal conduct necessary for conviction under a particular statute,'" *United States v. Hill*, 890 F.3d at 55 (quoting *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006)), by reviewing the elements of the offense.  But "to show a predicate conviction is not a crime of violence 'requires more than the application of legal imagination to [the] ... statute's language.'"  *Id*. at 56 (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)).  "[T]here must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence.  To show that a particular reading of the statute is realistic, a defendant 'must at least point to his own case or other cases in which the ... courts in fact did apply the statute in the ... manner for which he argues.'"  *Id*. at 56 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. at 193).  "To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy."  *Id*. (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)).  In *Davis*, the Supreme Court reaffirmed that Section 924(c)'s elements clause must be interpreted using the categorical approach.  *See* 139 S. Ct. at 2327 -33.

## ARGUMENT

### A.  The Defendant Procedurally Defaulted His Claim

Al-'Owhali never raised on appeal the challenge to his Section 924(c) conviction that he makes in the Motion, as he acknowledges.  *See* Mot. at 2 (question 9(f)), 4 (question 12(b)(1)), 5 (question 13)).  Accordingly, he procedurally defaulted his argument that Section 924(c)(3)(B) is impermissibly vague and that his Section 924(c) conviction should be vacated.  This default can be overcome only if he "can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent,'" *Bousley*, 523 U.S. at 622. He has not met, and cannot meet, this requirement.

Al-'Owhali has not shown, and cannot show, cause for his default on appeal.  As noted above, "cause" in this context requires an external impediment to raising the claim, not merely a failure to recognize the argument or even a belief that the argument would fail.  *See Bousley*, 523 U.S. at 623.  Al-'Owhali's claim that the "[i]ssue was not available until June 2019," (Mot. at 4 (question 12(b)(2)), is wrong.  Before Al-'Owhali's sentencing in 2001, numerous other litigants had raised vagueness challenges to other aspects of Section 924(c).  *See, e.g., United States v. Magee*, 21 F.3d 1108, 1994 WL 171513, at *4 (5th Cir. Apr. 22, 1994) (unpublished decision) (considering and rejecting vagueness challenge to Section 924(c), in particular "what activities constitute possession of a firearm in relation to a drug trafficking crime"); *United States v. Santos*, No. S 91 Cr 724, 1992 WL 232057, at *8 (S.D.N.Y. Sept. 2, 1992) (considering and rejecting vagueness challenge to Section 924(c)'s use of the terms "firearm silencer" and "firearm muffler").  Indeed, litigants were also raising vagueness challenges to Section 924(c)'s definition of "crime of violence" itself.  *See, e.g., United States v. Bennett*, 165 F.3d 36, 1998 WL 781231 (9th Cir.

Nov. 9, 1998) (unpublished decision) (considering and rejecting vagueness challenge to Section 924(c)'s definition of "crime of violence" insofar as that definition was interpreted to encompass possession of a firearm silencer). Particularly given that the Supreme Court had never, in a holding or dicta, either expressly or impliedly, rejected a vagueness challenge to Section 924(c)'s risk-of-force clause, Al-'Owhali lacks any cause for having failed to appeal on that ground. *See Thorn*, 659 F.3d at 233 (holding that a 2255 defendant could not "carry his burden to demonstrate good cause" where, "[b]y the time of Thorn's direct appeal, a number of defense attorneys had argued for a narrow construction of the term 'proceeds' in various contexts, including the federal money laundering statute [because t]his, by itself, precludes the conclusion that the argument was not available *at all* to Thorn" and, "[w]hile some courts rejected the argument, … the question had not been conclusively decided by this court") (emphasis in original).

Even if Al-'Owhali could establish cause for his default, he could not demonstrate prejudice. Nor, in the alternative, could he demonstrate actual innocence. As discussed below, the defendant's conviction under Section 844(f)(1) and (3) is a crime that falls within Section 924(c)'s force clause. Accordingly, he suffered no prejudice and *Davis* offers him no relief from his Section 924(c) conviction. Nor has Al-'Owhali established his actual innocence. Al-'Owhali has based his claim that he is "actually innocent" of violating Section 924(c) on his argument that Section 844(f) is not a crime of violence, not on any showing that he is factually innocent. *See* Mot. at 4 (question 12) ("GROUND ONE:  Al-Owhali is actually innocent of violating 18 USC §924(c) as 18 USC §844(f) does not define a 'crime of violence' pursuant to United States v. Davis 139 S Ct 2319 (2019)"). This is insufficient. Al-'Owhali must show not just his legal innocence,

11

but that he is factually innocent of the charge, *see Bousley*, 523 U.S. at 623, a showing he has failed to make.  Nor could the defendant make any such showing in light of the record in this case, which establishes, *inter alia*, that he was "an al Qaeda operative *who helped to place the bomb* that exploded outside the American Embassy in Nairobi, left the truck shortly before the bomb detonated and was seen fleeing the scene by an eyewitness."  552 F.3d at 105 (citation omitted) (emphasis added).

In sum, the defendant has not established either (1) cause and actual prejudice or (2) actual innocence. Therefore, his challenge is defaulted and this Court should deny the Motion.

## B. Malicious Damage To Or Destruction Of Federal Property By Means Of Fire Or An Explosive In Violation Of 18 U.S.C. §§ 844(f)(1) And (3) Qualifies As A Crime Of Violence

The Motion also fails because Count 7, which charges a violation of 18 U.S.C. § 844(f)(1) and (3), has as an element the "use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  It therefore qualifies as a crime of violence under the elements clause and serves as a valid predicate for the defendant's conviction on Count 285 pursuant to Section 924(c).

Section 844(f) requires the use or attempted use of force against the property of another. As charged in Count 7, Section 844(f)(1) prohibits "maliciously damag[ing] and destroy[ing], and attempt[ing] to damage and destroy, by means of fire and an explosive, buildings, vehicles and other personal and real property in whole and in part owned and possessed by, and leased to, the United States . . . ."  Ind. ¶ 33; 18 U.S.C. Section 844(f)(1).  This offense plainly requires the use or attempted use of physical force; the statute punishes the act of "damag[ing] or destroy[ing]

12

[property] . . . by means of fire or an explosive," or attempting to do so.  18 U.S.C. § 844(f)(1).  And that physical force must be used "against the . . . property of another," 18 U.S.C. § 924(c)(3)(A), namely property "owned or possessed by, or leased to, the United States" or federal departments or agencies or federally funded entities.  18 U.S.C. § 844(f)(1).  A Section 844(f) offense thus fits within Section 924(c)'s force, or elements, clause.  *United States v. Davis*, No. 1:16-CV-832, 2016 WL 11257359, at *5 (E.D. Va. Sept. 28, 2016) ("arson in violation of § 844(f)—is a crime of violence pursuant [to] § 924(c)'s force clause, not § 924(c)'s residual clause.").  *See Mbea v. Gonzalez*, 482 F.3d 276, 280 (4th Cir. 2007) (holding that a very similar District of Columbia statute is categorically a crime of violence under 18 U.S.C. § 16(a), which is identical to Section 924(c)'s force clause; "[i]t is plain that the malicious setting of fire to homes, public buildings, and churches 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'") (quoting 18 U.S.C. § 16(a)); *see also United States v. Shaker*, 665 F.Supp. 698, 702 n. 4 (N.D. Ind. 1987) (holding that 18 U.S.C. § 844(i), which also punishes maliciously damaging or destroying property by means of fire or an explosive,  is a "crime of violence" under the force clause of 18 U.S.C. § 3156(a)(4), which is identical to Section 924(c)'s force clause); *United States v. Marzullo*, 780 F.Supp. 658, 662 n. 7 (W.D. Mo. 1991) (same)).[6]

---

[6] Defendant was also charged in Count 7 under 18 U.S.C. § 2.  Ind. Count 7.  But if a substantive offense qualifies as a crime of violence under Section 924(c)(3)(A), then aiding and abetting that offense also qualifies as a crime of violence. *See, e.g.*, *United States v. Richardson*, 948 F.3d 733, 741-42 (6th Cir. Jan. 27, 2020) (joining the First, Third, Tenth, and Eleventh Circuits in holding that aiding and abetting Hobbs Act robbery is a crime of violence under § 924(c)(3)(A) and noting that "[t]here is no distinction between aiding and abetting the commission of a crime and

Defendant's argument to the contrary rests entirely on decisions in prosecutions brought pursuant to Section 844(i), not Section 844(f), principally *Evey v. United States,* No. 2:16-CV-08900-SVW, 2018 WL 6133407 (C.D. Cal. May 10, 2018).  (Mot. ¶¶ 16-17).  Defendant argues that "[t]he identical language in 18 USC §844(f)(1) and (i) makes . . . applicable to 18 U.S.C. §844(f)"  two of the reasons provided for the decision in *Evey*:  that a mens rea of recklessness, which is all that is required for malicious conduct, does not require the "use" of physical force, and that the statute does not require one to use any force at all, since recklessly disconnecting a gas hose suffices.  (Mot. ¶ 17).  According to the defendant, the third reason provided for the decision in *Evey* -- that a Section 844(i) offense can be committed against one's own property and not the property of another – is also applicable here.  "[A]s the statute covers property partially owned or leased to the United States, it is theoretically broad enough to cover damages to one's own property as well," he argues.  (Mot. ¶ 17).  "Thus," defendant concludes, "*Evey*'s principles .

---

committing the principal offense . . . to sustain a conviction under § 924(c), it makes no difference whether [the defendant] was an aider and abettor or a principal."); *Kidd v. United States*, 929 F.3d 578, 581 (8th Cir. 2019) (per curiam) (holding that armed robbery involving controlled substances qualifies as a crime of violence under Section 924(c)(3)(A), and that aiding and abetting that offense likewise qualifies "[b]ecause we treat an aider and abettor no differently than a principal"); *United States v. Mitchell*, 23 F.3d 1, 2–3 (1st Cir. 1994) (holding that aiding and abetting arson in violation of 18 U.S.C. §§ 841(i) and 2 is a crime of violence under the Bail Reform Act because "aiding and abetting is not a separate offense from the underlying substantive crime . . . the *acts* of the principal become those of the aider and abetter as a matter of law.  Accordingly, as other courts have held in analogous circumstances, aiding and abetting the commission of a crime of violence is a crime of violence itself.") (citations and internal quotation marks omitted) (emphasis in original).

. . should guide this Court in finding that 18 U.S.C. Section 844(f) does not describe a crime of violence." (*Id.*).   The defendant is wrong.

### 1. Defendant's Claim That The Crime Charged In Count 7 Does Not Require Use Of Physical Force Against The Property "Of Another" Is Wrong

Section 844(f) would permit, as defendant claims, a prosecution for maliciously damaging or destroying a building partly owned by or leased to the United States and partly owned by or leased to the defendant.  But that does not take Section 844(f) offenses outside of those that have "as an element the use, attempted use, or threatened use of physical force against the . . . property of another."  18 U.S.C. § 924(c)(3)(A).  A Section 844(f) prosecution may not be brought absent proof of the element that there has been damage to or destruction of federal property.  *E.g.*, 2 Modern Federal Jury Instructions-Criminal ¶ 30.01 (2019) ("The second element that the government must prove beyond a reasonable doubt is that the property which was damaged or destroyed was federal property. Federal property is defined in the statute as any building, vehicle, or other real or personal property in whole or in part owned, possessed or used by the United States government, any department or agency of the United States government, or any institution or organization receiving federal financial assistance.").  Such a crime may also damage or destroy the defendant's property, but damage to or destruction of the defendant's property is not sufficient to meet the elements of Section 844(f).  Damage to or destruction of federal property is the required element.  *See, e.g., United States v. York,* 600 F.3d 347, 354 (5th Cir. 2010) ("Given that these institutions or organizations receive federal financial assistance, or are a federal agency or department, and possess a part of the damaged building, the Government has put on legally sufficient evidence of the federal nexus.").

15

**2.   Defendant's Claim That The Mens Rea Required For The Crime Charged in Count 7 Is Insufficient To Require A "Use" Of Physical Force Is Meritless**

Nor does the mens rea required by Section 844(f) take it outside of Section 924(c)'s force clause.  The Government has not found a case in which the Second Circuit has described what mens rea "maliciously damag[ing] or destroy[ing]" property "by means of fire or an explosive" requires, but several other circuits have concluded that this language requires a defendant to have acted "intentionally or with deliberate disregard of the likelihood that damage or injury will result." *See United States v. Grady*, 746 F.3d 846, 848-49 (7th Cir. 2014) (addressing identical language in Section 844(i) and collecting cases); *United States v. Schlesinger*, 372 F. Supp. 2d 711, 722 (E.D.N.Y. 2005) ("The element of 'malice,' 'is satisfied if the defendant acted intentionally or with willful disregard of the likelihood that damage or injury would result from his or her acts.'") (addressing Section 844(i) and quoting *United States v. Gullett,* 75 F.3d 941, 948 (4th Cir.1996)).[7] This standard meets Section 924(c)(3)(A)'s requirement that an offense have "as an element the use . . . of physical force against the person or property of another."

The Supreme Court has held that the phrase "use . . . of physical force," which appears in the definition of a misdemeanor crime of violence, 18 U.S.C. § 921(a)(33)(A)(ii), includes reckless conduct.  *Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016) (citation omitted).  The Court

---

[7] The Supreme Court has described 18 U.S.C. § 844(i) as a statute that "corresponds . . . in all ways but" the jurisdictional element with a state arson statute that requires intentional conduct, *Torres v. Lynch*, 136 S. Ct. 1619, 1623 (2016), and as a statute whose "elements match up exactly with," and that "mirrors," that state arson statute.  *Id.* at 1625.  That case did not, however, focus on the mens rea required by either statute.

16

explained that the word "'use'" requires the force to be "volitional" but "does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so." *Id.* at 2279. The Court observed that the word "'use'" "is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." *Id.* Moreover, the Court noted, "nothing in *Leocal v. Ashcroft*," 543 U.S. 1 (2004), which addressed the mens rea requirement under the force clause of 18 U.S.C. § 16(a), "suggests a different conclusion—*i.e.*, that 'use' marks a dividing line between reckless and knowing conduct." *Voisine*, 136 S. Ct. at 2279. Rather, the Court indicated, the key "distinction [was] between accidents and recklessness." *Id.* Thus, under *Voisine*, "[a]s long as a defendant's use of force is not accidental or involuntary, it is 'naturally described as an active employment of force,' regardless of whether it is reckless, knowing, or intentional." *United States v. Haight*, 892 F.3d 1271, 1281 (D.C. Cir. 2018) (Kavanaugh, J.) (quoting *Voisine*, 136 S. Ct. at 2279), *cert. denied*, 139 S. Ct. 796 (2019).

Most Circuits to address the issue have extended the logic of *Voisine* from the context of misdemeanor crimes of violence to other force clauses, including Section 924(c)(3)(A)'s force clause. *See, e.g.*, *McCoy v. United States*, No. 16-3953, 2020 WL 2630856, at *2 (8th Cir. May 26, 2020) (Section 924(c)(3)(A)); *United States v. Mann*, 899 F.3d 898, 905 (10th Cir. 2018) (Section 924(c)(3)(A)); *United States v. Burris*, 920 F.3d 942, 951 (5th Cir. 2019) (ACCA), *petition for cert. pending*, No. 19-6186 (filed Oct. 3, 2019); *Haight*, 892 F.3d at 1281 (ACCA); *United States v. Verwiebe*, 874 F.3d 258, 264 (6th Cir. 2017) (U.S.S.G. § 4B1.2(a)); *United States*

*v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) (ACCA).[8]  As the D.C. Circuit explained, there is no reason to understand the language at issue in *Voisine* differently than statutes that include the phrase "against the person or property of another" since "the provision at issue in *Voisine* still required the defendant to use force against another person—namely, the 'victim.'"  *Haight*, 892 F.3d at 1281 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)).  The Supreme Court itself recognized this aspect of the statutory scheme at issue in *Voisine* when it described the phrase it was considering as "defined to include any misdemeanor committed *against a domestic relation*".  *Voisine*, 136 S. Ct. at 2276 (emphasis added).  *Accord United States v. Verwiebe*, 874 F.3d at 263 ("There ... are no victim-less prosecutions under the *Voisine* statute).  "That one statute requires a victim of the 'use of force' in one way, and the other statute requires a victim in another way, does not offer a meaningful basis for distinction."  *Verwiebe*, 874 F.3d at 263.

Moreover, any argument for viewing as more restrictive the language of Section 924(c)(3)(A) than the "use . . . of physical force" language at issue in *Voisine* based on the presence in the former statute of the phrase "against the person or property of another" is particularly weak

---

[8]Two Circuits have declined to extend *Voisine* to other force clauses.  *See, e.g., United States v. Begay*, 934 F.3d 1033, 1040 (9th Cir. 2019) (Section 924(c)(3)(A)); *United States v. Rose*, 896 F.3d 104, 109 (1st Cir. 2018) (ACCA).  But the Ninth Circuit in November granted rehearing *en banc* in a case that raises the issue, *United States v. Orona*, 942 F.3d 1159 (9th Cir. Nov. 18, 2019), so its view may change.  And the First Circuit, which had resolved the issue based on the rule of lenity because "we recognized it was a close call," *United States v. Baez-Martinez*, 950 F.3d 119, 127 (1st Cir. Feb. 11, 2020), in February narrowed an earlier decision and held that some forms of recklessness do satisfy ACCA's force clause.  *Id.* at 124 (a "heightened form of recklessness is sufficient for purposes of [ACCA's] force clause even though ordinary recklessness is not.").  *See also United States v. Middleton*, 883 F.3d 485, 497 (4th Cir. 2018) (concurrence declined to extend *Voisine* to the ACCA force clause).

when applied to a crime in which the volitional acts are setting fires and using explosives.  The

First Circuit has been concerned, for example, that it would not be "natural to say that a person

who chooses to drive in an intoxicated state uses force "against" the person injured in the resulting,

but unintended, car crash, even if one might say that the act of driving a car is volitional and

therefore that the driver "use[d] ... physical force" by driving the car so recklessly," *Bennett v.*

*United States*, 868 F.3d 1, 18 (1st Cir.), *opinion withdrawn and vacated*, 870 F.3d 34 (1st Cir.

2017) (citation omitted).[9]  But Section 844(f) describes a very different kind of crime.  When a

defendant drives drunk, the volitional act may involve no intended use of physical force "against"

any person or property; a drunkenly driven car may hit nothing more than molecules of air.  In

contrast, the volitional acts that underlie a Section 844(f) prosecution, which requires that a

defendant act "by means of fire or an explosive," are setting a fire or using an explosive. *See* 2

Modern Federal Jury Instructions-Criminal ¶ 30.01 (2019) ("In order to establish that the defendant

was guilty of the explosive destruction of property, the government must prove beyond a

reasonable doubt all of the following elements:  First, that the defendant set fire (*or* used an

explosive) to damage or destroy, or in an attempt to damage or destroy, property.").  These acts

are uses of physical force.  *United States v. Castleman*, 572 U.S. 157, 170 (2014) ("physical force

is simply force exerted by and through concrete bodies, as opposed to intellectual force or

---

[9] The opinion in *Bennett* was withdrawn as moot in light of Bennett's death before the opinion issued, 870 F.3d at 34, but the First Circuit in another case "endorse[d] and adopt[ed] its reasoning as our own."  *United States v. Windley*, 864 F.3d 36, 37 n.2 (1st Cir. 2017).

19

emotional force") (citation and internal quotation marks omitted); *Santana v. Holder*, 714 F.3d 140, 144 (2d Cir. 2013) ("fire is a physical force"); *Voisine*, 136 S. Ct. at 2279 ("use" requires volitional, as opposed to accidental conduct, not a purpose to cause harm or practical certainty that harm will result).   They are also actions that involve the use of physical force "against" property or persons.   Setting a fire requires that some property be ignited.   Using an explosive is an action taken "against" a person or property, leaving aside theoretical examples such as explosions created high up in the atmosphere that impact neither (and that therefore would not give rise to a prosecution under a statute that requires damage to or destruction of property).   *See Hill*, 890 F.3d at 56 ("there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence.   To show that a particular reading of the statute is realistic, a defendant 'must at least point to his own case or other cases in which the ... courts in fact did apply the statute in the ... manner for which he argues.'") (quoting *Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007)).   Thus, even if the phrase "against the person or property of another" in Section 924(c)(3)(A) might disqualify some crimes from fitting that definition, it does not disqualify prosecutions under Section 844(f).

Furthermore, this charge was brought not just under Section 844(f)(1), but also under Section 844(f)(3), Ind. Count 7, as the defendant acknowledges.   (*See* Mot. ¶ 13).   Section 844(f)(3) requires that the defendant's conduct "directly or proximately cause[d] the death of any person . . . ."   Thus a prosecution under Section 844(f)(3) must involve the use of physical force "against" a person.   To paraphrase the First Circuit in *Bennett*, it would not be natural to say that a person who set a fire or used an explosive, and as a result of doing so directly or proximately caused the death

20

of a person, did *not* use physical force against the person of another.[10]  Accordingly, with respect to Section 844(f) crimes, and especially with respect to crimes in which Section 844(f)(3) is charged, there is no reason to understand Section 924(c)(3)(A) differently than the language at issue in *Voisine*.

In addition, the Second Circuit has applied the reasoning of *Castleman*, 572 U.S. at 157, another case interpreting Section 921(a)(33)(A)(ii), the statute at issue in *Voisine*, to other force clauses, including Section 924(c)'s force clause. *See, e.g.*, *Hill*, 890 F.3d at 59 (Section 924(c)(3)(A)); *Villanueva v. United States*, 893 F.3d 123, 128-31 (2018) (ACCA). The reasoning of *Voisine* likewise should be applied here, so that reckless conduct under Section 844(f) constitutes a crime of violence under Section 924(c)'s force clause.[11]

The cases the defendant cites in support of his argument are not persuasive.  *Evey v. United States,* No. 2:16-CV-08900-SVW, 2018 WL 6133407 (C.D. Cal. May 10, 2018), on which the defendant relies most heavily, (Mot. ¶¶ 16-17), does not discuss *Voisine* at all.  Instead, it simply asserts that "Section 844(i)'s *mens rea* requirement fails to satisfy the force clause because it

---

[10] Section 844(f)(3) is not explicit that the defendant must cause the death of another person, since the statute refers to "any person."  However, a prosecution of a defendant under Section 844(f)(3) for causing his own death is the kind of theoretical possibility that need not be considered.  *Hill*, 890 F.3d at 56.  *See generally United States v. Morton*, 635 F.2d 723, 725 (8th Cir. 1980) ("In criminal cases, unlike civil actions, death of a defendant abates the penalty.") (citations omitted).

[11] The Supreme Court recently granted certiorari to consider whether reckless aggravated assault qualifies as a crime of violence under U.S.S.G. § 4B1.2(a).  *Borden v. United States*, 140 S. Ct. 1262 (March 2, 2020).

incorporates a *mens rea* of recklessness," and cites another district court case from the Ninth Circuit, *United States v. Johnson*, 227 F. Supp. 3d 1078, 1090 (N.D. Cal. 2016). *Id.* at *6. *Johnson*, in turn, acknowledged that the argument the Government made in that case and makes here, that *Voisine* establishes that a mens rea of recklessness is sufficient, "is not without merit." *Johnson,* 227 F.Supp.3d at 1089.  "Indeed," the *Johnson* court wrote, "in a post–*Voisine* case, the Ninth Circuit has acknowledged that its holding in *Fernandez–Ruiz* [*v. Gonzales,* 466 F.3d 1121 (9th Cir. 2006)] —*i.e.*, that neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16—is in tension with *Voisine* as the latter suggested the opposite, holding that for purposes of a similar statute—18 U.S.C. § 921(a)(33)(A)—reckless conduct can constitute a crime of violence." *Id. (*citing *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016)) (internal quotation marks omitted).  But *Fernandez-Ruiz* had not been overruled when *Johnson* was decided, so *Johnson* rested its holding principally on that pre-*Voisine* decision.  *Id.* at 1090.  This reasoning is hardly compelling, especially for courts outside the Ninth Circuit.

The remaining cases cited by the defendant, *United States v. Abed*, No. 7:97-CR-0024, 2019 WL 4306976 (W.D. Va. Sept. 11, 2019), *United States v. Vance*, No. 1:94-CR-0022-1, 2019 WL 4491333 (W.D. Va. Sept. 18, 2019), and *Hammond v. United States*, No. 3:19-CV-00544-KDB, 2019 WL 5295703 (W.D.N.C. Oct. 18, 2019), (Mot. ¶ 16), also concern Section 844(i) as an underlying offense.  *Abed,* 2019 WL 4306976 at *2, *Vance,* 2019 WL 4491333 at *4, n.1, *Hammond*, 2019 WL 5295703, at *2.  That statute, unlike Section 844(f), does not satisfy the requirement of Section 924(c)'s force clause that physical force be used against the person or

property "of another," and in each of these cases, apparently for that reason, the Government

conceded that the underlying arson convictions did not satisfy Section 924(c)'s force clause. *See*

*Abed,* 2019 WL 4306976 at *5; *Vance,* 2019 WL 4491333 at *4, n.1; *Hammond,* 2019 WL

5295703 at *1.[12]

### 3. Defendant's Claim That A Statute That Forbids Indirect As Well As Direct Uses of Physical Force Does Not Meet The Requirements of Section 924(c)(3)(A) Is Baseless

The fact that Section 844(f) forbids indirect, as well as direct, destruction or damage of

federal property by, for example, disconnecting a gas hose also does not take it outside the force

clause of Section 924(c), as the decisions in *Castleman* and *Hill* make clear.

In *Castleman*, the issue was whether a defendant's prior conviction for "intentionally or

knowingly caus[ing] bodily injury" to the mother of his child, in violation of Tennessee law,

qualified as a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9).

*See Castleman,* 572 U.S. at 159. To qualify under § 922(g)(9), the crime had to, among other

things, "ha[ve], as an element, the use . . . of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). The

Supreme Court held that the Tennessee statute met this requirement.  572 U.S. at 169.  In reaching

this holding, the Supreme Court expressly rejected the argument that "one can cause bodily injury

---

[12] The defendant also cites, as cases from which "*Evey*'s principles [were] drawn," *United States v. Whaley*, 552 F.3d 904 (8th Cir. 2009); *United States v. Monroe*, 178 F.3d 304 (5th Cir. 1999); *United States v. Wiktor*, 146 F.3d 815 (10th Cir. 1998); *United States v. Gullet*, 75 F.3d 941 (4th Cir. 1990); and *United States v. McBride*, 724 F.3d 754 (7th Cir. 2013).  (Mot. ¶ 17).  These cases do not shed light on the issues presented here because, *inter alia*, they all predate *Voisine* and *Castleman,* and none of them concerns a prosecution under Section 844(f).

23

without the use of physical force—for example, by deceiving the victim into drinking a poisoned beverage, without making contact of any kind." *Id.* at 170 (alterations and quotation marks omitted). The *Castleman* Court explained that "physical force" simply means "force exerted by and through concrete bodies, as opposed to intellectual force or emotional force"; there is no additional requirement that the force be applied directly rather than indirectly, such as by administering a poison. *See id.* (quotation marks omitted).

The *Castleman* Court also rejected the related argument that causing harm by poison is not a "use" of force. *See id.* at 170-71. The Supreme Court explained that the "use of force" in the poison example is not the act of sprinkling the poison, but rather "the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id.* at 171. Indeed, the alternative interpretation would lead to an absurd result: "Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.*

The Second Circuit has applied this reasoning to Section 924(c)'s force clause.  The Second Circuit noted that

> In *Castleman*, the Supreme Court . . . made clear that physical force "encompasses even its indirect application," as when a battery is committed by administering a poison: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter" lest we conclude that pulling the trigger on a gun involves no use of force "because it is the bullet, not the trigger, that actually strikes the victim." Hill offers no persuasive reason why the same principle should not apply to the construction of § 924(c)(3) . . . .

*Hill*, 890 F.3d at 59 (footnote omitted) (quoting *Castleman,* 134 S. Ct. at 1414-15).  The Second
Circuit has also recognized that *Castleman* abrogated the Second Circuit's prior "understanding
of the use of force," "[m]aking clear [the Supreme Court's] view that the inquiry as to 'force,' for
federal law purposes, focuses on the causation of a consequence, rather than the physical act of
initiating an action that leads to a consequence." *Villanueva*, 893 F.3d at 128, 130; *see also id.* at
129 ("[F]or federal law purposes, . . . the relevant force is the impact of the substance on the victim,
not the impact of the user on the substance."); *Banegas Gomez v. Barr*, 922 F.3d 101, 108 (2d  Cir.
2019) (explaining that "attempts such as these, to exclude from the concept of physical force actual
or threatened harm inflicted by poison or other 'substances,' reflect an outdated conception of
force") (citing *Villanueva*, 893 F.3d at 130), <u>*cert. denied sub nom.* *Gomez v. Barr*</u>, 140 S. Ct. 954
(2020); *Hill*, 890 F.3d at 60 ("[T]he *Chrzanoski* panel did not have the benefit of the Supreme
Court's reasoning in *Castleman* to the effect that a use of physical force can encompass acts
undertaken to cause physical harm, even when the harm occurs indirectly.").  In light of this
authority, there is no merit to defendant's argument that an indirect application of force that falls
within Section 844(f), such as disconnecting a gas hose, which leads to an explosion or a fire, is
not a "use . . . of physical force" within the meaning of Section 924(c)(3)(A).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny the Motion without a hearing.

Dated:  New York, New York
        June 1, 2020

                            Respectfully submitted,

                            GEOFFREY S. BERMAN
                            United States Attorney for the
                            Southern District of New York


                        By: _____/s/_____
                            Stephen J. Ritchin
                            Assistant United States Attorney
                            (212) 637- 2503

**AFFIRMATION OF SERVICE**

I, Stephen J. Ritchin, affirm under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the Southern District of New York.

2. On June 1, 2020, I caused a copy of the foregoing to be served on the Defendant via U.S. mail at the following address:

Mohamed Rashed Daoud Al-'Owhali
Reg. No. 42371-054
USP Marion
U.S. Penitentiary
PO BOX 1000
Marion, Illinois 62959

Dated: New York, New York
        June 1, 2020

By:    /s/
        Stephen J. Ritchin
        Assistant United States Attorney
        Southern District of New York